WENDY BUSH, Individually and as Parent and Natural Guardian of MELISSA J. BUSH, an Infant, Respondent, v VILLAGE OF SAUGERTIES, Defendant and Third-Party Plaintiff-Appellant-Respondent. TOWN OF SAUGERTIES, Third-Party Defendant-Appellant; BRENDA WILLIAMS, Third-Party Defendant-Respondent.

Third Department, February 13, 1986

APPEARANCES OF COUNSEL

*Riseley, Riseley, Findholt & Gruner (Paul L. Gruner* of counsel), for respondent.

*Raymond G. Lawlor (John J. Quackenbush, Jr.,* and *Justin E. Driscoll, III,* of counsel), for defendant and third-party plaintiff-appellant-respondent.

*James H. Kerr* for third-party defendant-appellant.

## OPINION OF THE COURT

WEISS, J.

The Town of Saugerties owns a park called Cantine Field which adjoins and is contiguous to a park owned by the Village of Saugerties called Lions Playground. Combined, the parks provide a wide range of recreational facilities used by both residents and the general public for which no fee is charged. There is a row of maple trees spaced 25 to 30 feet apart along the division line between the two parks. The town installed a steel cable from tree to tree attached with eye hooks screwed into the trees at a height of about 4 to 5 feet above the ground. The cable was a silver-gray color, unpainted, around which the town had wrapped orange-red surveyor's tape or surveyor's ribbon to make it more visible and, in addition, at 4 to 5 foot intervals, attached strips of streamers of the same material which hung down from the tape toward the ground. It was not unusual for persons to travel on foot or bicycle from one park to the other and, in the process, go between the trees while crossing the division line.

On June 4, 1982, Melissa J. Bush, then six years of age, was riding as a passenger on the cross-bar of a bicycle driven by her aunt, Brenda Williams. While attempting to take a short cut, Williams drove the bicycle between the trees along the common boundary line separating the parks and collided with the steel cable, as a result of which the infant sustained personal injuries. The town removed the cable entirely on the day following the accident. The infant's mother commenced separate negligence actions against the town and the village. The village commenced a third-party action against the town and Williams. Following examinations before trial, both the

town and village moved for summary judgment dismissing the actions against them on the ground that liability was precluded by General Obligations Law § 9-103. Holding that issues of fact existed which required determination at trial, Special Term denied the motions, giving rise to these appeals by both the town and the village.

These appeals require this court to decide whether the scope of General Obligations Law § 9-103 immunizes public owners of developed land, in this instance two public parks owned by two municipalities. Plaintiff urges that we distinguish the holding of the Court of Appeals in *Sega v State of New York* (60 NY2d 183) and instead adhere to the decision of the Appellate Division, Fourth Department, in *O'Keefe v State of New York* (104 AD2d 43), which involved claims against the State resulting from three drownings at a public marina owned and operated by the State. In sustaining the claims, the *O'Keefe* decision essentially held that the statutory immunity afforded by General Obligations Law § 9-103 does not extend to a public park or recreational facility open for public use. We agree. As noted by then Justice Hancock, Jr., in *O'Keefe,* nothing in *Sega* "precludes us from referring to legislative history in considering * * * the nature of the property and the types of claims which are within the reach of the statute" *(O'Keefe v State of New York, supra,* pp 45-46, n 2). Indeed, as the *Sega* court recognized, " ' "the absence of ambiguity facially is never conclusive" ' " *(Sega v State of New York, supra,* p 191, quoting *Uniformed Firefighters Assn. v Beekman,* 52 NY2d 463, 471). This is particularly pertinent where, as here, a literal application of the statute would work a dramatic change in the rules of negligence applicable to municipalities. In determining the scope of this statute, our primary objective must be to discern the legislative purpose of its enactment, an inquiry that necessitates consideration of its legislative history *(Rankin v Shanker,* 23 NY2d 111, 114).

Since the *O'Keefe* decision provides a thorough and accurate

---

* Special Term did not address the issue of whether General Obligations Law § 9-103 (1) (a) was applicable in this case; rather, the court found triable issues of fact had been raised which precluded granting the motion and cross motion for summary judgment.

Section 9-103 provides that landowners who gratuitously allow persons to use their property for certain enumerated recreational activities including "bicycle riding" are not liable to persons injured on the property except for "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [2] [a]).

review of this statute's historical development, it need not be repeated here. Instead, we need only observe that the initial purpose of its enactment was to open up "tracts of wild or undeveloped property suitable for hunting, fishing and trapping" *(O'Keefe v State of New York, supra,* p 48) and to protect the uncompensated owner/possessor from claims emanating from such activities *(see also,* 1 NY PJI 2d 122 [1984 Supp]). In other words, the statute served to open up lands for public recreational purposes by relieving the owner/possessor of potential tort liability, except for wanton or malicious acts. This original purpose is further reflected in subsequent amendments. For example, the 1978 addition of cross-country skiing among the enumerated activities was designed to promote the ski industry while concomitantly protecting the owner/possessor from potential lawsuits (L 1978, ch 187; memorandum of Senator Ronald P. Stafford, 1978 NY Legis Ann, at 150). As the *O'Keefe* decision points out, a governmental entity does not require similar encouragement to open and maintain a public recreational area *(O'Keefe v State of New York, supra,* p 47). Nor would any public interest be served by reducing the duty of care owed by a governmental entity in the operation of its public facilities. To the contrary, considering that the frequent users of our municipal parks are children, to define the municipality's responsibilities in terms of willful or malicious conduct, a lesser standard than that owed a licensee under the common law, would often work the unwarranted result of precluding recovery despite the existence of a viable claim under general rules of landowner negligence *(see, Nicholson v Board of Educ.,* 36 NY2d 798, 800).

Moreover, the unique duty owed to the ordinary public users of municipal parks is clearly not what the Legislature intended to alleviate by General Obligations Law § 9-103. As stated in *Sega,* the purpose of the legislation was to insulate from liability for ordinary negligence "landowners who *gratuitously allow* persons to use their property for certain enumerated recreational activities" *(Sega v State of New York,* 60 NY2d 183, 186, *supra;* emphasis supplied). Once the subject parks were dedicated, an easement was created in favor of the public for the uses to which municipal parks are ordinarily applied *(see, Porter v International Bridge Co.,* 200 NY 234, 245; 42 NY Jur, Parks and Recreation Centers, § 7, at 544 [1965]). Thereafter, the village and town had no absolute right to exclude the general public, plaintiff included *(cf. Williams v*

*Gallatin,* 229 NY 248). It follows that this is not simply an instance of permissive use to which the statute seemingly is limited.

In view of the stated purpose of this legislation, we agree with the *O'Keefe* rationale that an extension of the statutory protection of General Obligations Law § 9-103 to public parks would render a drastic change in the rules of liability attendant a municipality's duty to the public, never envisioned nor intended by the Legislature *(O'Keefe v State of New York, supra,* p 45). Accordingly, we conclude that General Obligations Law § 9-103 does not extend to a municipal park developed and open for public recreational use, where, as in the instant case, the activity involved is a permitted use. There is nothing in this record to suggest that bicycle riding was in any manner restricted in the village and town parks in question *(cf. Mattison v Hudson Falls Cent. School Dist.,* 91 AD2d 1133). Accordingly, the traditional standard of ordinary care should apply *(O'Keefe v State of New York, supra,* p 44; *see, Solomon v City of New York,* 66 NY2d 1026). Since questions of fact are readily apparent as to whether the village or town breached its duty to plaintiff, Special Term properly denied the motions for summary judgment.

CASEY, J. (concurring).

Although I concur in the result, I do not agree with the majority's conclusion that General Obligations Law § 9-103 cannot be applied to a municipal park developed and open for public recreational use where the activity involved is a permitted use. In reaching this conclusion, the majority relies exclusively upon the rationale employed by the Fourth Department in *O'Keefe v State of New York* (104 AD2d 43), which held that General Obligations Law § 9-103 did not apply to claims against the State or a municipality for negligence in operating and maintaining a public park or recreational facility despite the fact that the claims arose out of one of the activities enumerated in the statute.

Any question as to whether General Obligations Law § 9-103 applies to land held in a proprietary capacity by the State or a municipality was laid to rest in *Sega v State of New York* (60 NY2d 183, 190-191), which held the statute applicable to a claim arising out of hiking near the Peekamoose Campsite in the State-owned Catskill Forest Preserve. The *O'Keefe* court sought to harmonize its holding with *Sega* and other cases construing section 9-103 by noting that most of those cases

"involve tracts of relatively undeveloped land" *(O'Keefe v State of New York, supra,* p 49). By their very nature, most of the activities enumerated in the statute would ordinarily be undertaken on relatively undeveloped land, but there may be circumstances where the use of developed land would be appropriate as well *(see, Mattison v Hudson Falls Cent. School Dist.,* 91 AD2d 1133). Moreover, the lands involved in *Sega* and its companion case, *Cutway v State of New York* (60 NY2d 183), were not without some improvements. In *Sega,* there was an unpaved road and a bridge with pipe railings; in *Cutway,* the land had an unpaved road, a gate and a number of buildings, albeit vacant. Under the *O'Keefe* rationale, adopted by the majority of this court, it is apparent that development or improvement of public land for recreational purposes will, at some undefined point, become significant enough to remove the land from the ambit of section 9-103, which would otherwise be applicable under *Sega.* This result constitutes an impermissible judicial revision of an otherwise unambiguous statute under the guise of statutory construction.

On its face, the statute plainly includes developed land within its purview. Due to the absence of any language limiting the scope of the statute to private landowners, the Court of Appeals rejected the claimed distinction between public and private lands *(Sega v State of New York,* 60 NY2d 183, 190, *supra).* It follows, therefore, that the absence of any language limiting the scope of the statute to undeveloped (or slightly developed) land negates the existence of any distinction between developed and undeveloped land, irrespective of whether the land is a public park. Moreover, the statute expressly refers to "structure or activity on such premises" (General Obligations Law § 9-103 [1] [a]), indicating that developed lands were to be included. In *Mattison v Hudson Falls Cent. School Dist. (supra),* this court held that General Obligations Law § 9-103 was applicable to a claim arising out of snowmobile operation on a snow-covered baseball field, a developed public recreational facility. The majority seeks to distinguish *Mattison* on the theory that snowmobile operation was not a permitted use of the premises, but the statutory language draws no distinction between permitted and nonpermitted activities. The statute specifically applies to all premises "whether or not posted" (General Obligations Law § 9-103 [1] [a]).

Had the Legislature intended to exclude from the protection of General Obligations Law § 9-103 public landowners who

develop their premises for recreational uses, it would not have enacted a statute which "[b]y its terms * * * refers to *any* 'owner lessee or occupant of premises' " *(Sega v State of New York, supra,* p 190; emphasis in original). Given the plain wording of the statute, and since this court has previously held section 9-103 applicable to a claim arising out of an enumerated activity on a developed public recreational facility *(Mattison v Hudson Falls Cent. School Dist., supra),* there is no basis in law for now holding that section 9-103 does not apply to public park land developed and open for recreational use. Any claimed inequity in such a conclusion should be addressed to the Legislature.

Turning to the question of whether the claim herein arose out of an activity covered by General Obligations Law § 9-103, the statute applies only to persons who enter the premises for the purpose of engaging in one of the enumerated recreational activities (General Obligations Law § 9-103 [1]). We must look not to the particular activity undertaken at the moment the injury occurs, but, rather, at the over-all purpose of the entry of the premises. If the premises were entered for the purpose of engaging in one of the enumerated recreational activities, the statute would apply, even though the injury arose out of an incidental activity not enumerated in the statute *(Sega v State of New York, supra* [hiker injured while sitting on a bridge railing which broke]; *Curtiss v County of Chemung,* 78 AD2d 908 [hikers injured when barn, where they stopped to rest, collapsed]). It appears from the allegations in the record that although the infant was riding on a bicycle at the moment she incurred the injuries, her entry and use of the premises might not have been for the purpose of bicycle riding within the meaning of General Obligations Law § 9-103. Rather, the record suggests that the bicycle riding was incidental to the infant's use of the premises as a playground, an activity not covered by the statute.

To be contrasted is the recent case of *Seminara v Highland Lake Bible Conference* (112 AD2d 630), where this court held that General Obligations Law § 9-103 applied to an injury arising out of bicycle riding without regard to whether the bicycling was for a recreational purpose. In *Seminara,* the plaintiff rode his bicycle across the defendant's premises to retrieve a jacket he had left there. Although his ultimate goal may have been to retrieve his jacket, the plaintiff's purpose for entering the premises was to ride his bicycle across the property to the point where his jacket was located and ride his

bicycle back across the property; the defendant's premises were to be used by the plaintiff for no purpose other than bicycling. Thus, this court held that the plaintiff entered the premises for the purpose of bicycle riding within the meaning of section 9-103.

Since a factual issue exists in this case as to whether the infant's entry and use of the premises was for the purpose of bicycle riding, within the meaning of General Obligations Law § 9-103, summary judgment was properly denied.

MAHONEY, P. J., KANE and LEVINE, JJ., concur with WEISS, J.; CASEY, J., concurs in a separate opinion.

Order affirmed, without costs.