JOSEPH A. IANNOTTI, Respondent, v CONSOLIDATED RAIL CORPO-
RATION, Appellant.

Third Department, May 5, 1988

**APPEARANCES OF COUNSEL**

*McNamee, Lochner, Titus & Williams, P. C. (G. Kimball Williams* of counsel), for appellant.

*Richard A. Insogna* for respondent.

**OPINION OF THE COURT**

CASEY, J. P.:

At issue on this appeal is whether General Obligations Law § 9-103, which limits a landowner's liability when his premises are used for certain recreational purposes, applies to property which is located within the city limits of the City of Amsterdam, Fulton County, and is neither remote nor undeveloped. Based upon the holding of the Appellate Division, First Department, in *Russo v City of New York* (116 AD2d 240), Supreme Court concluded that the statute did not apply to defendant's property and denied defendant's motion for summary judgment. While we agree that the statute is not applicable to defendant's property, we decline to follow the First Department's rationale in *Russo.*

The subject property is located in the vicinity of the intersection of West Main Street (Route 5) and Caroline Street in the City of Amsterdam, near the point where Caroline Street perpendicularly crosses defendant's railroad tracks. At some time between sunset and 9:00 P.M. on September 29, 1982, plaintiff, who had used the same route earlier to go to the Amsterdam Mall where he shopped and ate dinner, was

operating his motorized trail bike along a stone and dirt right-of-way, which was 20 to 25 feet wide and ran adjacent to defendant's railroad tracks. Defendant's trackmen use the right-of-way to inspect and repair the railroad bed and tracks. Plaintiff alleges that the right-of-way had been used by pedestrians, snowmobilers, motorcyclists, three-wheelers and the operators of other unregistered vehicles for more than the past 10 years. Plaintiff sustained serious physical injury when his trail bike struck a pile of stones, called ballast, throwing him forcibly from the bike.

In *Russo v City of New York* (116 AD2d 240, *supra),* the plaintiff was injured while riding his motorbike along a dirt roadway on a strip of undeveloped land, 125 to 230 feet wide, known as the Catskill Aqueduct Lands, which runs the entire length of Westchester County and is traversed by a subsurface aqueduct that is part of the New York City reservoir system. In that case, the court held that "[t]he narrow strip of land on which the plaintiff was injured is located in a densely populated and highly developed area not within the purview of General Obligations Law § 9-103" *(supra,* at 245). We conclude that neither the size and shape of the property nor its proximity to densely populated and highly developed areas precludes the application of the statute.

Based upon the clear wording of General Obligations Law § 9-103 and its well-established purpose, we conclude that the applicability of the statute hinges upon the determination of whether, based upon all relevant facts and circumstances, the property is "of the type that would ordinarily be frequented by sportsmen engaged in the * * * listed activities" *(Ferres v City of New Rochelle,* 68 NY2d 446, 453). We reach this conclusion for a number of reasons, not the least of which is the irrationality of a statutory construction which would deprive a landowner of the limited liability of the statute merely because his land, while otherwise suitable for one or more of the enumerated recreational activities, is not located in an area that can be characterized as wilderness, remote or undeveloped.[1] Based upon its context in former Conservation Law § 370 when first enacted (L 1956, ch 842), and the nature of the four activities then covered—hunting, fishing, trapping and training of dogs—the Court of Appeals concluded in

---

1. Conversely, the fact that land, which is otherwise unsuitable for a listed recreational activity, is located in an undeveloped wilderness area should not render the statute applicable.

*Ferres v City of New Rochelle (supra,* at 453) "that the statute was originally envisioned as applying to undeveloped or wilderness areas of the type that would ordinarily be frequented by sportsmen engaged in the four listed activities". In 1964, the statute was removed from former Conservation Law § 370 and reenacted as part of General Obligations Law § 9-103 (L 1963, ch 576)[2] and, thereafter, numerous amendments to General Obligations Law § 9-103 were added to the recreational activities listed in the statute *(e.g.,* L 1965, ch 367 [added hiking]; L 1966, ch 886 [added horseback riding]; L 1968, ch 7 [added snowmobile operation]; L 1971, ch 343 [added motorized vehicle operation for recreational purposes]; L 1972, ch 106 [added bicycle riding]). The current listing includes a total of 18 diverse recreational activities, at least some of which are "less suggestive of wilderness areas" *(Ferres v City of New Rochelle, supra,* at 453). Indeed, it takes little imagination to perceive the difficulties one might encounter in attempting to ride a bicycle in the type of undeveloped wilderness areas declared by the court in *Ferres* to be envisioned by the statute as originally enacted. Legislative history confirms that the intent of the various amendments was to expand the recreational activities covered by the statute *(see, e.g.,* Governor's Bill Jacket, L 1965, ch 367; Governor's Bill Jacket, L 1971, ch 343), and there is nothing in either the amendments themselves or the legislative history to suggest that the Legislature intended not to expand the type of land covered by the statute to correspond to the enumerated activities. In *Ferres,* the court recognized that the amendments suggested that such an expansion or broadening was intended by the Legislature.

A conclusion that the Legislature intended to broaden the recreational activities but restrict the type of land covered by General Obligations Law § 9-103 would run counter to the sole purpose of the statute, which "was, and continues to be, to encourage landowners to allow their properties to be used by the public for a limited number of outdoor recreational activities" *(Ferres v City of New Rochelle, supra,* at 452). How is this purpose served by excluding lands which are otherwise suitable for a listed recreational purpose, merely because those

---

2. While the repeal of former Conservation Law § 370 and its reenactment as General Obligations Law § 9-103 was not intended to effect a change in the law as it then existed (General Obligations Law § 1-201), any inference to be drawn from the context of the statute in the former Conservation Law is no longer available with respect to the construction of the statute as amended after its transfer to the General Obligations Law.

lands cannot be characterized as wilderness, remote or undeveloped? To be contrasted is the judicially created exclusion for State or municipally owned, maintained and supervised parks or recreational facilities open to the public *(see, e.g., Ferres v City of New Rochelle, supra; Smith v State of New York,* 124 AD2d 296; *Bush v Village of Saugerties,* 114 AD2d 176; *O'Keefe v State of New York,* 104 AD2d 43). As explained by the Court of Appeals in *Ferres v City of New Rochelle (supra,* at 451-454), the exclusion is based upon the legislative purpose of General Obligations Law § 9-103; since these parks are already open to the public for recreational uses, including many of the uses listed in the statute, there is no need to encourage the State or municipality to open its land up for public use by giving it the benefit of the statute.[3] We see no such rational connection between the statutory purpose of General Obligations Law § 9-103 and an exclusion for land which is not in an undeveloped wilderness area.

Finally, our construction of the statute as encompassing land that is suitable for a listed recreational activity despite its proximity to densely populated and highly developed areas is consistent with prior decisions of this court in which we have applied the statute to lands which clearly were not undeveloped wilderness areas *(see, Seminara v Highland Lake Bible Conference,* 112 AD2d 630; *Mattison v Hudson Falls Cent. School Dist.,* 91 AD2d 1133). It is also consistent with the approach being taken by the Appellate Division, Fourth Department *(see, Hirschler v Anco Bldrs.,* 126 AD2d 971; *compare, Michalovic v Genesee-Monroe Racing Assn.,* 79 AD2d 82 [Moule, J.], *with O'Keefe v State of New York,* 104 AD2d 43, 52 [Moule, J., dissenting], *supra).* As the Fourth Department explained in *Hirschler v Anco Bldrs. (supra,* at 972), "The remoteness or proximity of a defendant's property to developed land, while possibly a factor to be considered in the

---

3. In *Sega v State of New York* (60 NY2d 183, 186), the protection afforded by General Obligations Law § 9-103 was held to be "available to the State itself when no fee is charged for pursuing [the listed] activities on publicly owned property". The *Ferres* and *Sega* cases can be reconciled by examining the respective roles of the governmental landowners *(see,* Governor's Bill Jacket, L 1956, ch 842). In *Ferres v City of New Rochelle* (68 NY2d 446), the City of New Rochelle was not only the owner of land held open to the public, but it also operated, supervised and maintained various public recreational facilities in its public park. In *Sega,* on the other hand, the State was merely a landowner which held its land open to the public; the land contained a camping ground with limited improvements and the area was largely unsupervised.

application of the statute, is not controlling." We conclude, therefore, that the mere fact that defendant's property runs through the City of Amsterdam and is not located in an undeveloped wilderness area does not preclude the application of General Obligations Law § 9-103.

■ Based upon all of the relevant facts and circumstances, however, we hold that defendant's property is not suitable for the operation of a motorized vehicle for recreational purposes within the meaning of General Obligations Law § 9-103. A railroad bed and system of tracks have been constructed on the property and are used and maintained in the commercial operation of a railroad. Other equipment, either affixed permanently to the property or brought in temporarily, is also used in conjunction with the operation of the railroad. The right-of-way on which plaintiff was riding is not a path through some unused portion of defendant's property; it is immediately adjacent to the railroad tracks and apparently has the same type of surface as the bed of the railroad tracks. Defendant's trackmen use it in the performance of their duties for defendant. The portion of defendant's right-of-way where plaintiff rode his trail bike is an integral part of defendant's commercial use and development of the property as a railroad. We find that defendant's property, which was constructed, maintained and used for the commercial operation of a railroad, is not the type of property the Legislature intended to encourage landowners to open up for public recreational use by enacting General Obligations Law § 9-103 and its various amendments *(see, Michalovic v Genesee-Monroe Racing Assn.,* 79 AD2d 82, *supra; see also,* Governor's Bill Jacket, L 1972, ch 106 [which refers to *abandoned* railroad rights-of-way]). Our conclusion would be the same irrespective of whether plaintiff's accident occurred on defendant's property within the city limits or at some point along similar property outside of the city limits in a more rural or wilderness setting *(but see, Cassella v Delaware & Hudson Ry. Co.,* 133 Misc 2d 128).

Since we agree with Supreme Court that factual issues have been raised concerning plaintiff's allegations of negligence, the order must be affirmed.

HARVEY, J. (dissenting). I agree with the majority that General Obligations Law § 9-103 is not limited to wilderness, remote or undeveloped land. I further agree that the test as to whether the property should be afforded the protection of the

statute is whether it is "of the type that would ordinarily be frequented by sportsmen engaged in the * * * listed activities" *(Ferres v City of New Rochelle,* 68 NY2d 446, 453). Among the numerous activities listed in the statute are hunting, fishing, trapping, cross-country skiing, motorized vehicle operation for recreational purposes and snowmobile operation (General Obligations Law § 9-103 [1] [a]). Railroad rights-of-way are used extensively by sportsmen, sometimes in wilderness areas and sometimes in more populous areas, for these various activities. Nothing in the statute indicates that such property should be excluded from consideration merely because it is owned or controlled by a railroad company.

The mere fact that this property has a commercial use should not automatically result in General Obligations Law § 9-103 being inapplicable. The focus should be upon the purpose for which the injured party was using the property. Here, it is undisputed that the main use for the property was a commercial one, i.e., providing railroad transportation. This does not, however, detract from the fact that the property was also suitable for recreational use. Indeed, plaintiff's use of the property and his injury were totally unrelated to defendant's commercial use. Defendant did not gain any commercial profit from allowing plaintiff, or others like him, to use its right-of-way. Plaintiff was on the property for the purpose of pursuing a recreational activity as defined in the statute.

The Court of Appeals has indicated that General Obligations Law § 9-103 may be considered when an individual is injured while upon railroad property for a recreational purpose *(see, Merriman v Baker,* 34 NY2d 330, 333-334). When faced with a case with virtually identical facts to the one at bar, Supreme Court found the statute applicable in *Cassella v Delaware & Hudson Ry. Co.* (133 Misc 2d 128). Further, it merits noting that courts construing similar recreational use statutes in other jurisdictions have likewise found those statutes applicable when individuals were on railroad property pursuing recreational activities *(see, e.g., Power v Union Pac. R. R. Co.,* 655 F2d 1380, 1386-1388; *Lovell v Chesapeake & Ohio R. R. Co.,* 457 F2d 1009, 1010; *Lostritto v Southern Pac. Transp. Co.,* 73 Cal App 3d 737, 746-747, 140 Cal Rptr 905; *see generally,* Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User,* 47 ALR4th 262).

I would hold that General Obligations Law § 9-103 is appli-

cable in the instant case. Under that statute, a landowner is liable "for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity" (General Obligations Law § 9-103 [2] [a]). Since plaintiff alleged only negligence in his complaint and failed to allege a breach of the standard set forth in General Obligations Law § 9-103, I would reverse Supreme Court's order and grant defendant's motion for summary judgment dismissing the complaint.

YESAWICH, JR., and MERCURE, JJ., concur with CASEY, J. P.; HARVEY, J., dissents and votes to reverse in an opinion.

Order affirmed, with costs.