OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff alleges that he was injured while riding his motorized trail bike within the City of Amsterdam along a stone and dirt right-of-way 20 to 25 feet wide adjacent to defendant’s railroad tracks. The right-of-way, which had once formed the bed of a track, since abandoned, was used occasionally by railroad workmen as an access road for purposes of maintaining the existing tracks. In plaintiffs suit for damages he alleges ordinary negligence. Because there is no allegation *42 of willful or malicious failure to warn, defendant moved for summary judgment or dismissal on the basis of the recreational use statute (General Obligations Law § 9-103) which grants immunity from liability for ordinary negligence to owners of property who permit members of the public to come on their property to engage in one of several enumerated recreational activities.[1]
The Supreme Court denied defendant’s motion and the Appellate Division affirmed with a divided court, holding, as a matter of law, that General Obligations Law § 9-103 was inapplicable to defendant’s property.[2] The court was unanimous that the location of defendant’s property within the city limits and near densely populated and highly developed areas rather than in an undeveloped wilderness area did not preclude its suitability for recreational use and the consequent applicability of section 9-103 (Iannotti v Consolidated Rail Corp., 137 AD2d 62, 65-66, 67).
The Appellate Division majority concluded, however, that the statute did not cover defendant’s property, because it was "maintained and used for the commercial operation of a railroad, [and was] not the type of property the Legislature intended to encourage landowners to open up for public recreational use by enacting General Obligations Law § 9-103 *43 and its various amendments” (137 AD2d, at 67). The dissenter expressed the view that the property’s commercial use should not prohibit the statute’s application, noting that railroad "rights-of-way are used extensively by sportsmen, sometimes in wilderness areas and sometimes in more populous areas” for various recreational activities and that the property’s commercial use for railroad purposes did not "detract from the fact that [it was] also suitable for recreational use” (137 AD2d, at 68).
The legal question framed by the two writings at the Appellate Division, thus, is this: notwithstanding that a property is otherwise suitable for a particular recreational use, is the application of General Obligations Law § 9-103 barred, as a matter of law, because the property has a presently existing commercial use? For reasons stated hereafter, we agree with the dissenter that the property’s commercial use does not have that effect. There should accordingly be a reversal.
We commence our analysis with a review of the decision in Ferres v City of New Rochelle (68 NY2d 446) which, like the case before us, entailed a contention by plaintiff that section 9-103 was inapplicable because of the particular characteristics of the property involved. In Ferres, plaintiff’s suit for damages was based on the city’s negligence in maintaining the supervised public park and recreational facility where he was injured. We held that the Legislature could not have intended that the broad grant of immunity afforded by the statute be given effect to relieve a municipality from its legal responsibilities for properly maintaining a supervised recreational facility which it held open for public use.
We reasoned, from the wording of General Obligations Law § 9-103 and an analysis of its statutory scheme as well as from the relevant legislative history, that the sole purpose of the statute was "to induce property owners, who might otherwise be reluctant to do so for fear of liability, to permit persons to come on their property to pursue specified activities” (id., at 451). The extensive protection from liability conferred, we noted, is the quid pro quo which the statute offers to property owners to induce them to open their lands for recreational use. Because the claim in Ferres involved a supervised public park — a facility operated for the very purpose of furnishing a place for outdoor public recreation, thus making the statutory inducement unnecessary and the grant of immunity under the statute obviously inappropriate — we held that it "would be *44 contrary to reason to assume that the Legislature could have intended that the statute apply in circumstances where neither the basic purpose of the statute, nor, indeed, any purpose could be served” (id., at 452). Since granting immunity for a supervised public park of the type in Ferres would neither fit the statute’s scheme nor further its underlying purpose, we held — despite the statutory language covering, without limitation, "an owner, lessee or occupant of premises” (General Obligations Law § 9-103; see, Ferres v City of New Rochelle, supra, at 451) — that the Legislature could not have intended section 9-103 to be applicable.
Before we address plaintiff’s contention that applying General Obligations Law § 9-103 to defendant’s commercial property would not be consistent with the purpose of the statute as we analyzed it in Ferres, we note our agreement with the unanimous conclusion of the Appellate Division that section 9-103 is not limited to claims arising in wilderness, remote or undeveloped areas (137 AD2d, at 64; see also, Gardner v Owasco Riv. Ry., 142 AD2d 61, 63; Seminara v Highland Lake Bible Conference, 112 AD2d 630; Mattison v Hudson Falls Cent. School Dist., 91 AD2d 1133).[3] In view of the wide range of activities presently covered by the statute, there is no basis for giving it the narrow construction urged by plaintiff. As we noted in Ferres, when the recreational statute was originally enacted as part of the Conservation Law (former § 370, added L 1956, ch 842) it was intended to lessen " 'the anxiety of owners, lessees and occupants of premises suitable for hunting, fishing and trapping’ ” (68 NY2d, at 452-453, quoting Bill Jacket, L 1956, ch 842, at 18, Mem of NY Law Rev Commn) by limiting their liability for injuries incurred by persons engaging in these activities. From its location in the Conservation Law and the type of activities covered, we concluded that "the statute was originally envisioned as applying to undeveloped or wilderness areas of the type that would ordinarily be frequented by sportsmen engaged in the four listed activities — hunting, trapping, fishing, and training of dogs” (id., at 453 [emphasis added]).
This original restricted reach of the statute has, however, *45 been altered (see, Ferres v City of New Rochelle, supra, at 452-453; O’Keefe v State of New York, 104 AD2d 43, 45-46). Subsequent amendments have added a variety of other activities including snowmobiling (L 1968, ch 7), off-road recreational vehicle riding (L 1971, ch 343), bicycling (L 1972, ch 106), and sledding and tobogganing (L 1984, ch 141); some of which are compatible with types of properties other than undeveloped or wilderness areas (e.g., an open hill in an urban or suburban setting, while certainly not suitable for hunting or trapping, could be an ideal place for sledding). Thus, in keeping with the legislative purpose of opening lands to the public for the listed recreational uses, the general class of properties covered has necessarily been enlarged. As pointed out by the Appellate Division, it would be irrational to adopt a "statutory construction which would deprive a landowner of the limited liability of the statute merely because his land, while otherwise suitable for one or more of the enumerated recreational activities, is not located in an area that can be characterized as wilderness, remote or undeveloped” (137 AD2d, at 64).
There is no more reason to make a categorical exception from the scope of General Obligations Law § 9-103 for properties which are in active commercial use than for properties which are not located in remote, undeveloped or wilderness areas. In reaching this conclusion we note that there is nothing in the statute indicating that commercially used property should be treated differently from other property. To the contrary, in Sega v State of New York (60 NY2d 183) we remarked on the unrestricted wording of the statute, noting that "section 9-103 refers to any 'owner, lessee, or occupant of premises’ ” (id., at 190 [emphasis in original]).
A commercial property may be well suited to public use for several of the enumerated activities (e.g., hiking, cross-country skiing, and horseback riding) and yet be in active use for its commercial purpose. The question is whether — notwithstanding its contemporaneous commercial use — the property is the sort which the Legislature would have envisioned as being opened up to the public for recreational activities as a result of the inducement offered in the statute. In other words, is it a type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation? If it is, application of General Obligations Law § 9-103 *46 to such property as an inducement to the owner to make it available to the public would further the statutory purpose.
The concurrence would not adopt this test. Rather, it would apply the statute as long as the injured party is "engaged in one of the listed activities at the time of his injury” even when the property is not a suitable area for the public to pursue the particular recreational activity (see, concurring opn, at 51).[4] It follows that under this construction, section 9-103 would apply, for example, to give an owner of a small urban backyard immunity from the claim on behalf of a neighbor’s child injured while riding a bicycle. We submit that the Legislature could not have intended this result for two reasons: (1) there could be no public interest in inducing the owners of such unsuitable properties to make them available for public recreation; and (2) that being so, offering immunity as the quid pro quo to such owners would be pointless and would not further the underlying statutory purpose (Ferres v City of New Rochelle, supra, at 451, 452). The concurrence, however, would, for the sake of creating a "bright-line test” (see, concurring opn, at 50), make the statute generally appli cable regardless of whether the property could be deemed suitable for public recreational use. This construction would result in the adoption of the markedly reduced section 9-103 "willful or malicious failure to warn” standard instead of the Basso v Miller (40 NY2d 233) "reasonable care” standard and thereby abrogate the common-law rule for property owner liability in any case where one of the several listed activities is being pursued (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [statutes in derogation of common-law rule should generally receive strict construction]). Contrary to the assertions in the concurrence (concurring opn, at 50), there is nothing in the legislative history which indicates that the Legislature ever contemplated that it was effecting such a sweeping change in a fundamental rule of owner liability.
Turning to the specific property involved here, it is not disputed that the right-of-way was physically amenable to public use for a number of recreational activities. Plaintiff in his affidavit and in his examination before trial stated that he and others had used the property for more than 10 years for riding snowmobiles, motorcycles, three-wheelers, and other *47 unregistered motor vehicles. The parties do not suggest that the occasional use of the property for railroad maintenance purposes detracted from its suitability for a public recreational purpose (see, Power v Union Pac. R. R. Co., 655 F2d 1380, 1387 [9th Cir; interpreting State of Washington recreational use statute as immunizing railroad from those injured on its track bed]; Lovell v Chesapeake & Ohio R. R. Co., 457 F2d 1009, 1010 [6th Cir; applying Michigan recreational use statute to same effect]).[5] Analyzing the question in the light of the statutory purpose, as we did in Ferres, we conclude that applying section 9-103 to defendant’s right-of-way would be consistent with the underlying purpose of inducing property owners to make their lands accessible to the public for recreational use.
Finally, we see no merit in plaintiff’s contention that the statute should not apply because when the accident happened he was returning to his home from shopping and having a "bite to eat”. The argument is that he was using his trail bike not for recreation but for transportation and was, therefore, outside the statute. Obviously, that the bike was being used for transportation would not mean that its use was not also recreational. There is nothing in the statute or its history suggesting that the Legislature intended that its application should turn on the subjective intent of the injured person when engaging in one of the enumerated activities (see, Gardner v Owasco Riv. Ry., 142 AD2d 61, 63-64, supra).
Moreover, although section 9-103 states that it applies to "motorized vehicle operation for recreational purposes” (emphasis added), when read in context of the entire statute and in light of the underlying legislative purpose, it is evident that the phrase "for recreational purposes” is used to distinguish between on-road and off-road uses — not to reflect the particular user’s state of mind.[6]
*48 Accordingly, the order of the Appellate Division should be reversed, with costs, defendant’s motion for summary judgment granted and certified question answered in the affirmative.

. Use of motorized trail bike is one of the recreational activities.
General Obligations Law § 9-103 (1) (a) provides, in pertinent part, that:
"1. Except as provided in subdivision two,
"a. an owner, lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for hunting, fishing, organized gleaning as defined in section seventy-one-y of the agriculture and markets law, canoeing, boating, trapping, hiking, cross-country skiing, tobogganing, sledding, speleological activities, horseback riding, bicycle riding, hang gliding, motorized vehicle operation for recreational purposes, snowmobile operation, cutting or gathering of wood for non-commercial purposes or training of dogs, or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes;
* * *
"This section does not limit the liability which would otherwise exist
"a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity” (emphasis added).

. The appeal is before us by permission of the Appellate Division pursuant to CPLR 5602 (b) (1). The Appellate Division certified the following question "Did this court err as a matter of law in affirming the order of the Supreme Court denying a motion by defendant to dismiss the complaint, or in the alternative, for summary judgment?”

. The rejection of the construction limiting the statute to "wilderness, remote or undeveloped” areas, as the Appellate Division noted, is contrary to the view in the First Department (see, Russo v State of New York, 116 AD2d 240) and consistent with the view taken by the Fourth Department (see, Hirschler v ANCO Bldrs., 126 AD2d 971; contra, Michalovic v Genesee-Monroe Racing Assn., 79 AD2d 82, 85).

. The concurrence, although rejecting suitability, does indicate that it would consider other factors in determining the applicability of the statute (see, concurring opn, at 51,52). It does not specify what these factors might be.

. Indeed, the Bill Jacket to L 1972, ch 106 (adding bicycling to the section) includes a memorandum stating that General Obligations Law § 9-103 encourages snowmobile drivers, hikers, horseback riders and others to use abandoned railroad right-of-ways (see, Bill Jacket, at 3, Mem of Assemblyman Frank A. Carroll).

. As originally proposed the amendment would have added only the words "motorized vehicle operation” to the statute (see, Bill Jacket, L 1971, ch 343). Because Vehicle and Traffic Law § 125 defined "motor vehicle”, in part, as "[e]very vehicle operated or driven upon a public highway” (emphasis added), the phrase "for recreational purposes” was added apparently to distinguish between on- and ofF-road driving (see, Mem to Governor’s Coun *48 sel from Assn of Bar of City of New York, Bill Jacket, L 1971 ch 343, at 12-13; see also, Mem of Assemblyman Emeel S. Betros, Bill Jacket, L 1971 ch 343, at 19-20). Thus, plaintiffs use of his motorized trail bike is not outside the statute because he was using it for transportation at the time of the accident.