*546 OPINION OF THE COURT
D. Bruce Crew III, J.
In this action, which arises out of an accident which occurred on the property of Fairport Central School District (hereinafter Fairport), the defendant Fairport moves for summary judgment on the ground that General Obligations Law § 9-103 immunizes it from liability for the injuries sustained by the infant plaintiff while sledding on its property. The plaintiffs cross-move to dismiss the defense on the ground that it is not applicable due to the nature of the activity and the facility involved and that the premises were not physically conducive to the activity that took place.
The basic facts giving rise to this litigation are not in dispute. On February 9, 1986 at approximately 5:30 in the afternoon Linda Gruber took her children, Michael and Vickey, to Fairport for the purpose of traversing the snow-covered slopes that were on the property. The children had with them air-inflated inner-tube type vehicles covered with a plastic material designed so that a person could sit on top of the tube while on snow or in water. Upon arriving at Fairport Michael Gruber climbed to the top of a slope, sat in an upright position on his inner tube and went down the hill. At some point where the slope ended and a playing field began, Michael Gruber fell from his vehicle and struck his head on the hard packed snow and ice, sustaining serious brain damage.
General Obligations Law § 9-103 (1) (a), the so-called recreational use statute, grants immunity from liability for ordinary negligence to owners of property who permit members of the public to come on their property to engage in any of several enumerated recreational activities.[1] Defendant alleges that the activity in which plaintiffs were involved was sledding (a specified activity) and that it is therefore immunized from this lawsuit pursuant to the statute. Plaintiffs urge, on the other hand, that the activity involved was not sledding as the term is used in the statute. They claim the involved activity is properly characterized as sliding and since the statute is in derogation of the common law its terms must be *547 construed strictly and that the activity of sliding is not specified in the statute.
Generally, a statute that is in derogation of the common law should be construed strictly, since it is presumed that the Legislature did not intend to change the common law any further than the plain meaning of the words used in the act (McKinney’s Cons Laws of NY, Book 1, Statutes § 301; Iannotti v Consolidated Rail Corp., 74 NY2d 39; Sega v State of New York, 60 NY2d 183, 191). However, in some cases, such as here, the words used seemingly have no plain meaning and it then falls to the court to interpret them.[2]
McKinney’s Consolidated Laws of NY, Book 1, Statutes contains a compendium of the various rules of the construction applicable to statutory interpretation, two of which are most germane to the case at bar. First, words used in a statute are to be given their usual and commonly understood meaning (McKinney’s Cons Laws of NY, Book 1, Statutes § 232). The ordinary meaning of a word has been said to be that generally accepted at the time of the enactment of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes §232, at 394). Second, the court should look to the general purpose of the statute and construe it in a manner which furthers its object, spirit and purpose (McKinney’s Cons Laws of NY, Book 1, Statutes § 96).
Webster’s New International Dictionary, Unabridged, copyrighted through the year 1931, defines a sled as "a vehicle on runners used for conveying loads, esp. over snow or ice” and a toboggan as "a kind of long, flat-bottomed, light sled made of thin board or boards curved up at one end”. In Webster’s Third International Dictionary, Unabridged, copyrighted through the year 1976, the word sled is defined as "a vehicle that moves by sliding, usually on a pair of runners especially over snow or ice” and a toboggan as "a long flat-bottomed sled made of thin boards curved up at one end”. In Webster’s definition of sled, there has been an evolution of sorts from a vehicle on runners to a vehicle that usually has runners used to carry objects over snow and ice. The Random House Dictionary of the English Language, Unabridged, does not alter its *548 definition of sled or toboggan from the first edition, copyrighted • through 1931, to the second edition, copyrighted through 1987. It defines a sled as "a small vehicle consisting of a platform mounted on runners for use in traveling over snow and ice” and a toboggan as "a long, narrow, flat-bottomed sled made of a third board curved upward and backward at the front”. Interestingly, both Webster and Random House define a toboggan as a flat-bottomed sled.
The legislative purpose of General Obligations Law § 9-103 is to induce property owners to open lands to public use for the listed recreational activities (Iannotti v Consolidated Rail Corp., supra, at 45). The quid pro quo is the legislative grant of immunity from personal injury suits to the owners on whose lands the specified activity occurs (Iannotti v Consolidated Rail Corp., supra; Ferres v City of New Rochelle, 68 NY2d 446). To read the statute as plaintiffs would have it, owners would be required to patrol their property, allowing entrance only to vehicles with runners or flat-bottomed curved ends. Failing this the owners’ alternative would be either to risk liability or, more likely, close the property to all. Such interpretation clearly would not advance the legislative purpose of the statute. It is the opinion of this court that the common understanding of the word sled is a vehicle with or without runners that is used to carry persons (particularly children) by means of sliding over snow or ice. The 1984 amendment adding the words tobogganing and sledding occurred at a time when there were numerous vehicles designed to carry persons over snow and ice that were not mounted on runners and the natural and most obvious meaning for the word sled must have included those various available vehicles.[3] Certainly, such a construction furthers the purpose of the statute. For the foregoing reasons this court finds that Michael Gruber was involved in the activity of sledding.
The plaintiffs next argue that this case is governed by the decision in Ferres v City of New Rochelle (supra), and that Fairport did not fulfill its duty in the operation and maintenance of a public recreational facility. Plaintiffs note that the school property was open to all members of the public through its participation in the Perinton Recreation and Parks Depart *549 ment outdoor project. They argue that the intent of the statute was to open lands to the public and that it cannot apply to the defendant Fairport because the land was already open to the public. Ferres v City of New Rochelle (supra) involved a bicycle accident at the entrance of the City of New Rochelle’s municipal park. After carefully analyzing the statute, the Court of Appeals concluded that since its purpose was to encourage landowners to open their land for recreational use it made little sense to extend its coverage to a city to relieve it from its legal responsibility for properly maintaining a supervised recreational facility already open to public use.
The Ferres decision (supra) is distinguishable from the case at bar. Fairport does not operate, supervise or maintain a public recreational facility. The fact that Perinton Recreation Department receives permission to schedule events for its outdoor program at the school grounds does not alter the purpose of the facility. Fairport owns property upon which parents are encouraged to send their children for education and physical exercise during specified hours of operation. Unlike a municipal park, the school does not encourage the public to come upon property which it will maintain and supervise for tobogganing and sledding and the infant plaintiff was not participating in an event scheduled by the Perinton Recreation Department at the time of his injury. The statute unambiguously includes public property (Sega v State of New York, supra, at 190) and it clearly would encourage a school district to open its lands for use by the public for the specified activities by removing the threat of liability.
Finally, the plaintiffs contend that the General Obligations Law does not provide a defense to Fairport because its premises were not physically conducive to the activity of tobogganing or sledding. In support of that position plaintiffs have provided the sworn affidavit of an expert who opines that the area where the accident occurred was unsafe, dangerous and defective due to the abrupt change and inconsistency in the grade where the slope intersects with a playing field. There is no question that the plurality in Iannotti (supra) fashioned a judicial condition upon the statute. Pursuant to Iannotti in order for General Obligations Law to be applicable in a given case the property in question must have been appropriate for the use undertaken by the recreationist. This concept is indeed problematical. We have an expert who is of the opinion that the property is dangerous because of the confluence of slope and playing field and, therefore, not conducive to sled *550 ding. Yet the statute in question protects the landowner from just such a condition. As observed by Chief Judge Wachtler in a concurring opinion in Iannotti:
"It is not clear what physical attributes of the property will render it inappropriate for a given use. I assume that it must be something other than a dangerous condition or else the statute will never be applicable in the very situation it was designed to address — where an injury is caused by a dangerous condition on the land.
"It will certainly be difficult, even for Judges and lawyers, to draw the line between land covered by the statute despite the presence of dangerous conditions and land which falls outside the statute because it is 'inappropriate’ for the particular recreational activity” (74 NY2d, supra, at 49).
In the case at bar we have a large, open suburban property with rolling hills which have been used for years for sledding, without known accidents or complaint. The property obviously has attributes that anyone would deem appropriate for tobogganing or sledding. Plaintiffs’ expert tells us of a dangerous condition on the land which is precisely what the Legislature intended to address when enacting the statute. Accordingly, we find that the property in question is a type of property which is physically conducive to sledding and appropriate for public use in pursuing sledding as a recreation (74 NY2d, supra, at 45).
The defendant’s motion for summary judgment is granted and plaintiffs’ cross motion is denied. Submit order within 60 days of the date of this decision pursuant to section 202.48 of the Uniform Rules for Trial Courts (22 NYCRR).

. Insofar as applicable to this case the statute provides that "an owner * ** * of premises * * * owes no duty to keep the premises safe for entry or use by others for * * * tobogganing * * * [or] sledding * * * or to give warning of any hazardous condition * * * on such premises to persons entering for such purpose”.

. One of the avenues of statutory interpretation is review of the legislative history. Unfortunately, the Bill Jacket that accompanied the statutory enactment does not give insight into the particular meaning of the words tobogganing and sledding and there is no indication that any legislative discussion took place prior to their addition (Bill Jacket, L 1984, ch 141).

. Examples of various other types of sliding vehicles in existence at the time of the amendment are snow discs, felix-a-boggens and hot pans, to name a few. Interestingly, the very vehicle on which the infant plaintiff was sliding, a Sno-Cat Thundertube, was in existence at the time of the amendment.