Keith **LARINI** and Sally **Larini,**
Plaintiffs–Appellants,

v.

**BIOMASS INDUSTRIES, INC.,**
Defendant–Appellee.

No. 186, Docket 90–7361.

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1990.

Decided Nov. 13, 1990.

---

Abby J. Resnick, New York City (Sullivan & Liapakis, P.C., New York City, Jay W. Danker and Stephen C. Glasser of counsel), for plaintiffs-appellants.

Alan J. Pierce, Syracuse, N.Y. (Hancock & Estabrook, Syracuse, N.Y., Bruce G. Soden, of counsel), for defendant-appellee.

Before OAKES, Chief Judge,
MESKILL, Circuit Judge, and RESTANI,
Judge.[*]

RESTANI, Judge:

Appellants, Keith Larini and Sally Larini ("appellants"), appeal from an order granting summary judgment entered in the United States District Court for the Northern District of New York, dated March 16, 1990. Appellants seek reversal of dismissal of their action to recover damages for personal injuries sustained by Keith Larini ("Larini") on March 1, 1986, when he was injured while operating a snowmobile on property owned by appellee, Biomass Industries, Inc. ("appellee").

In granting appellee's Motion for Summary Judgment, the district court held that the New York General Obligations Law

[*] Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

§ 9–103 (the "Statute") applies to the accident at issue.[1] The statute provides owners of certain recreational property immunity from liability to others for personal injuries, with three exceptions. The general applicability of the statute and the first two of its exceptions are at issue.[2]

## FACTS

On February 19, 1980, appellee purchased approximately nine hundred acres of sparsely populated wilderness in Windham, New York. In 1982, appellee subdivided the property and made limited improvements to Lake Road, a roadway running perpendicular to a downhill egress stream. As part of the improvements appellee placed a large pipe under Lake Road in order to permit drainage from the adjacent pond to flow under the roadway into the stream bed on the other side. Placement of this drainage pipe evidently created a channel or stream bed approximately seven to nine feet below the level of Lake Road.

Following the subdivision and the improvements, the area was named "Windham Lakes" and a segment of the property was offered for sale to the general public. Prior to March 1, 1986, Larini looked at and was informed of the availability of lots in Windham Lakes by the Judith Higgins Realty Office of Windham, New York, which also provided him with a site plan and price quotations.

On the evening of March 1, 1986, Larini went snowmobiling alone, ostensibly to inspect a particular lot in Windham Lakes

that he was interested in purchasing. Appellant had not spoken to either a real estate agent or a representative of appellee about viewing the property that evening. Larini entered the Windham Lakes subdivision at dusk. The front headlights of the snowmobile were turned on, illuminating approximately 75 to 100 feet in front of the vehicle. As Larini was traveling along Lake Road he decided to veer off the roadway at or just below the hill crest leading down to the drainage ditch and stream bed. When he drove his snowmobile downhill into the stream bed, Larini was catapulted across the stream bed, striking the far embankment. Appellant Larini sustained serious personal injuries in the incident.

Appellee had not given Larini either written or oral permission to travel on Lake Road. Moreover, the roadway was unplowed, posted with "No Trespassing" signs and blocked by both a metal gate and a wall of snow approximately four to six feet high, extending the entire width of the roadway.

## DISCUSSION

New York General Obligations Law § 9–103 was originally enacted as part of the former Conservation Law. See Conservation Law § 370, as added by L.1956, ch. 842, McKinney's Session Laws of New York. The Memorandum of the Joint Legislative Committee on Revision of the Conservation Law cites the "posting of private premises so as to exclude sportsmen and trappers" as a major problem in the management and use of wildlife resources

---

**1.** General Obligations Law § 9–103 provides, in pertinent part, as follows:

 1. Except as provided in subdivision two,
 a. an owner, lessee or occupant of premises, whether or not posted as provided in section three hundred sixty-six of the conservation law, owes no duty to keep the premises safe for entry or use by others for ... snowmobile operation ... or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes; ...
 2. This section does not limit the liability which would otherwise exist,
 a. for willful or malicious failure to guard, or to warn against a dangerous condition, use, structure or activity; or

 b. for injury suffered in any case where permission to pursue any of the activities enumerated in this section was granted for a consideration ...

**2.** The third exception to the statute's immunity is:

for injury caused, by acts of persons to whom permission to pursue any of the activities enumerated in this section was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.

§ 9–103(2)(c). Appellants do not contend that this exception applies.

of New York, and concludes that one reason for such posting is the fear on the part of the owners that they may be exposed to liability for injuries suffered on their premises by persons whom they permit to enter for hunting, fishing or trapping. Memorandum of Joint Legislative Committee on Revision of the Conservation Law, McKinney's Session Laws of New York, 1956, at 1943. The Memorandum also reiterates what the statute expressly states, that is, that the statute applies to property "whether or not posted." *Id.* Over the years, the legislature expanded the reach of the statute by adding other recreational pursuits to the list of specified activities. *See e.g.,* L.1965, ch. 367 (hiking added), L.1966, ch. 886 (horseback riding added), L.1968, ch. 7 (snowmobiling added). The New York courts, in turn, have interpreted the scope of the statute broadly. Currently the statute applies to a wide range of activities and types of properties and, as the Court of Appeals observed in *Iannotti v. Consolidated Rail Corp.*, 74 N.Y.2d 39, 44–45, 542 N.E.2d 621, 623, 544 N.Y.S.2d 308, 310 (1989), "[the] original restricted reach of the statute has ... been altered (citations omitted)."

### 1. Applicability of Statutory Immunity

Appellants argue that the basic statutory immunity is inapplicable here for two reasons. First, appellants contend that because the legislative intent in enacting the statute was to encourage landowners to make their property available for certain recreational activities, the attempts made by appellee to prevent the public from entering the property negate the purpose of the statute. It may be concluded that the posting of "No Trespassing" signs and the placement of blockades at the front entrance of the property were intended to impede, if not prevent, public access to

Windham Lakes. Nevertheless, in this case defendant only sealed off the access road to Windham Lakes. Thus, the property itself was at least partially open to the public as it remained usable for several of the activities enumerated in the statute, such as snowmobiling or cross-country skiing.

The fact that the property was posted with "No Trespassing" signs, while concededly not encouraging public access, did not physically prevent members of the public from using the land for many of the recreational pursuits which the legislature sought to promote. Furthermore, the statute expressly provides that it is applicable whether or not "No Trespassing" signs are posted. Posting is irrelevant because the statute extends to landowners whose land is available for recreational pursuits similar protections to those applicable under former law to landowners sued by trespassers.[3] Obviously, the legislature did not view posting as inconsistent with the purpose of the statute.

New York courts have applied the statute at issue here despite the erection by the property owners of various types of barriers to entry. *See Sega v. State of New York*, 60 N.Y.2d 183, 456 N.E.2d 1174, 469 N.Y.S.2d 51 (1983) (court held § 9–103 applied notwithstanding the fact that the State had placed a locked chain across the bridge where the incident occurred to prevent access); *Cutway v. State of New York*, 89 A.D.2d 406, 456 N.Y.S.2d 539 (1982), *rev'd* 60 N.Y.2d 183, 456 N.E.2d 1174, 469 N.Y.S.2d 51 (1983) (companion case to *Sega v. State of New York*) (court found § 9–103 applicable even though the State had attempted to restrict access to the property where plaintiff was injured by installing a gate consisting of two steel well casings set in cement on each side of the entry road with a steel cable stretched

---

**3.** Prior to 1976 New York courts consistently held, as a principle of general negligence law, that an owner's duty to a trespasser was merely to abstain from inflicting intentional, wanton or willful injuries on the trespasser and to refrain from setting out or maintaining on his premises an inherently dangerous instrumentality or condition in the nature of a perilous trap. *See*

*Beauchamp v. New York City Housing Authority,* 12 N.Y.2d 400, 190 N.E.2d 412, 240 N.Y.S.2d 15 (1963); *Carbone v. Mackchil Realty Corp.,* 296 N.Y. 154, 71 N.E.2d 447 (1947). *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976) altered the standard. *See infra,* discussion p. 1052.

between the posts and reflectors hung from the cable). Thus, while the original legislative intent may appear somewhat narrower than the current wording of the statute and even the original wording, the courts of New York have chosen to give the fullest effect to the language of the statute.[4] Accordingly, appellee's use of signs and blockades to inhibit entry by users such as Larini does not render the statute inapplicable.

Second, appellants maintain that the Windham Lakes property does not fall within the scope of the statute because the property does not meet the test formulated by a plurality of the Court of Appeals in *Iannotti v. Consolidated Rail Corp.*, *supra*, at 74 N.Y.2d 45–46, 542 N.E.2d at 624, 544 N.Y.S.2d at 311 (plurality opinion by Hancock, J., in which Alexander and Titone, JJ., concur); *id.* at 52, 542 N.E.2d at 628, 544 N.Y.S.2d at 315 (dissenting opinion of Simons, J., in which Kaye, J., concurs [agreeing with the plurality opinion that the application of § 9–103 "depends upon the suitability of the premises for the recreational uses stated in the statute"]). In *Iannotti* the court adopted a two pronged test to determine whether property is of the sort which the legislature intended to be more accessible to the public for recreational activities as a result of the inducement of the statute. The *Iannotti* court began its inquiry by asking if the property was physically conducive to the particular activity or sport. The court then focused the inquiry by asking whether the property was also a type which would be appropriate for public use for the recreational activity in question. *Id.*

At the time of Larini's accident, Lake Road was a wide, snow covered roadway traversing undeveloped wilderness. Appellants contend that the property was not amenable to snowmobiling because of numerous obstacles such as trees, stone walls and a pond. The trial court disagreed. It found, as common sense dictates, that this wide roadway through unspoiled woods made the property extremely attractive to

the snowmobiling enthusiast. Moreover, the "obstacles" referred to by appellants merely added to the natural beauty of the surroundings and would be visible by a snowmobiler from the flat, semi-developed road. The trial judge also noted the general conduciveness of the property for use in pursuing various types of winter recreational activities and snowmobiling in particular. We conclude that the district court correctly determined that the record developed in this case left little doubt that the property was conducive to snowmobiling and was of a type generally appropriate for recreational snowmobiling by the public.

### 2. Exceptions to Basic Statutory Immunity

As indicated, appellants also press their arguments as to the applicability of two exceptions to the basic provisions of the statute. Appellants contend that the exception contained in § 9–103(2)(b), for situations in which the landowner, for consideration, has granted permission to pursue the recreational activity applies. They allege that Larini used the snowmobile to survey the property with the intention of purchasing a lot in the Windham Lakes subdivision. Appellants attempt to argue that appellee anticipated receiving consideration because it held the property out for sale and Larini was a potential purchaser. Thus, although specific permission was not given for a consideration, appellants claim that a type of indirect consideration existed.

Appellants attempt to persuade this Court to adopt the "indirect consideration" theory, offering as support cases from the Third Circuit, Georgia and West Virginia. *See Hallacker v. National Bank & Trust Co.*, 806 F.2d 488 (3d Cir.1986); *Cedeno v. Lockwood, Inc.*, 250 Ga. 799, 301 S.E.2d 265 (1983); *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880 (1975). In *Seminara v. Highland Lake Bible Conference, Inc.*, 112 A.D.2d 630, 492 N.Y.S.2d 146 (3d Dep't. 1985), however, the Appellate Division of

---

**4.** For example, in *Iannotti v. Consolidated Rail Corp.*, 74 N.Y.2d 39, 542 N.E.2d 621, 544 N.Y. S.2d 308 (1989), the court ruled that the statute applied to suitable commercial property as well as undeveloped wilderness areas.

the Supreme Court of New York held that the "indirect consideration" claimed to be present in that case did not satisfy the exception. In *Seminara*, the plaintiff used recreational facilities located on defendant's property without receiving specific permission. He also frequented a snack bar owned by defendant. One evening as he was riding his bicycle across an open field to retrieve a jacket that he had left there earlier, his bicycle went into a drainage ditch causing serious injuries. The court rejected plaintiff's argument that because plaintiff had made purchases from the snack bar from time to time, he had paid a consideration for the privilege of bicycling there.[5] There are, apparently, no New York cases recognizing any form of indirect consideration for purposes of the exception at issue.

■ Assuming *arguendo* that some form of indirect consideration might suffice under New York law, the plain language of the consideration exception to the statute requires the injured party to demonstrate that he had "permission" to undertake the activity in question on the property. It is undisputed that Larini did not have express permission to enter the property. In addition, the factual circumstances do not imply permission. Larini had no reason to believe that he had permission to enter the property unless accompanied by either a real estate agent or a representative of appellee. More importantly, no specific permission for snowmobiling was given. Therefore, appellants' contention that this action falls within the exception to the statute set forth in § 9–103(2)(b) fails.

■ Appellants also assert that the exception to the general grant of liability contained in § 9–103(2)(a) for willful or malicious conduct applies. Appellants maintain that appellee's failure to erect guardrails around the drop off or provide warnings constituted "willful or malicious" conduct rendering the immunity of § 9–103 inapplicable. Plaintiffs, however, face a substantial evidentiary burden in proving that a defendant's conduct rises to a level of a "willful or malicious" failure to warn. In interpreting this exception, the Appellate Division, Third Department has defined willful conduct as "[i]ntentional acts of unreasonable character, performed in disregard of a known or obvious risk so great as to make it highly probable that harm will result," *Seminara v. Highland Lake Bible Conference, Inc., supra*, at 633, 492 N.Y.S.2d at 148 (citing W. Prosser & W. Keeton, *The Law of Torts* § 34, at 213 [5th ed. 1984]) and concluded that "the same tests apply to a willful failure to warn." *Id.*

In *Seminara v. Highland Lake Bible Conference, Inc., supra*, at 633, 492 N.Y. S.2d at 148–49, the court concluded that the drainage ditch involved in the bicycle accident "constituted no danger to those using the land for its usual and ordinary purposes." The court reasoned that as there was no evidence that this portion of defendant's property had ever been used by bicyclists, "[i]t would be incongruous to require the landowner ... to warn bicyclists, who had not been given permission to ride their bicycles in that area, of all the perils they might encounter." *Id.* at 633, 492 N.Y.S.2d at 149. Likewise, the stream bed leading from the culvert under Lake Road posed no danger to those who used the road for its usual and ordinary purpose, namely, viewing the undeveloped lots for possible purchase, by snowmobiling or otherwise. Appellee could not be expected to mark all off-road obstacles. We also note *Cutway v. State of New York, supra*, 60 N.Y.2d at 192, 456 N.E.2d at 1178, 469 N.Y.S.2d at 55–56, in which the court found that although the State might have been negligent in constructing a cable gate and failing to post warnings, there was nothing to show that its conduct was willful or malicious. Therefore, we concur with the trial court's determination that the Larinis

---

**5.** The *Seminara* court also reasoned that the statute applied even though plaintiff was riding a bicycle for the purpose of transportation, not recreation, because the statute plainly identified the various immunized activities. *Id.* at 632,

492 N.Y.S.2d at 148 ("The legislative intent with respect to General Obligations Law § 9–103 is clear on its face and there is no reason to resort to any interpretive reading [citations omitted].").

failed to produce evidence sufficient to raise a triable issue of fact with respect to the allegation of appellee's willful or malicious conduct.

### 3. Common Law Liability

 Finally, appellants contend that the enactment of § 9–103 did not extinguish the common law liability of a landowner. In *Basso v. Miller*, the New York Court of Appeals held that the liability of a landowner should be measured by "the single standard of reasonable care under the circumstances ...", thus abolishing the old common law rule that the liability varied with the plaintiff's status of licensee, invitee or trespasser.[6] Appellants argue that appellee may be held liable under the new common law test because appellee could reasonably have expected the public to enter the property and sustain injury because of the nature of the hidden obstacle. Appellants assert that the "burden" placed upon appellee would have consisted of erecting a guardrail, marker or reflectory light system, all relatively inexpensive ways of avoiding the risk of injury.

We hold, however, that § 9–103 supplants the common law duty of reasonable care in situations covered by the statute. Under the statute, a landowner is judged by the standard of "willful or malicious" conduct. In *Curtiss v. County of Chemung,* 78 A.D.2d 908, 909–10, 433 N.Y.S.2d 514, 516 (3d Dep't 1980), the court observed that "[b]ecause the statute expressly codified the [then existing] common law, it remained unaffected by the decision in *Basso v. Miller* (citation omitted)." If *Basso v. Miller,* which changed the existing common law, did not affect the statutory grant of immunity for a specific class of landowners, then it is logical to conclude that the statute constitutes the sole standard applicable to this class of property owners. *See also Schoonmaker v. Ridge Runners Club 99, Inc.,* 119 A.D.2d 858, 860, 500 N.Y.S.2d 562, 564 (3d Dep't.) ("[Section 9–103] effects a change, in certain enumerated instances, in the common law's view of a landowner's liability for injuries to third

parties as a consequence of defects in his property [citing *Sega v. State of New York, supra,* [60 N.Y.2d] at 191, 456 N.E.2d at 1178, 469 N.Y.S.2d at 55].") , *appeal dismissed* 68 N.Y.2d 807, 498 N.E.2d 437, 506 N.Y.S.2d 1037 (1986).

Accordingly, we find no genuine issues of material fact and the trial court's grant of the Motion for Summary Judgment is affirmed.

---

6. *See supra,* note 3, 40 N.Y.2d at 241, 352 N.E.2d at 872, 386 N.Y.S.2d at 568.