OPINION OF THE COURT
 

 Simons, J.
 

 Defendant Genesee County Agricultural Society is the owner of an abandoned railway bed that runs from Batavia to Lockport. In 1988 defendant Lathan, the Society’s president, made an oral agreement with a trucking company to excavate gravel from the railbed. Lathan selected the site for the excavation and, though aware that off-road vehicles used the property, did not instruct the contractor to post warning signs or barriers in the area. By September 1990, when this accident occurred, the contractor’s activities had left an opening in the railbed which was 10 feet deep and dropped from the trail at an angle of approximately 80 degrees. Plaintiff Bragg was injured while traveling on the railbed when he drove his motorbike into the excavation.
 

 Plaintiff instituted this action seeking damages for his injuries and defendants responded by asserting the provisions of General Obligations Law § 9-103 as a defense. That statute grants immunity for ordinary negligence to landowners who
 
 *547
 
 permit members of the public to come on their property to engage in several enumerated recreational activities, including motorbiking. Plaintiff moved to dismiss the defense but Supreme Court denied his motion and granted defendants’ cross motion for summary judgment. It concluded that the statute applied and that plaintiff had failed to present evidence to support his further claim that defendants had acted willfully or maliciously and had therefore lost the statutory immunity
 
 (see,
 
 General Obligations Law § 9-103 [2] [a]). The Appellate Division affirmed.
 

 Plaintiff contends that defendants are not entitled to the protection afforded by the statute because the property was not suitable for motorbiking under the rule set forth in
 
 Iannotti v Consolidated Rail Corp.
 
 (74 NY2d 39). He implicitly concedes that the property was “suitable” for motorbiking when he drove over it five months earlier but, alleging that intervening excavating activity had altered the property, contends that the test of suitability must be applied to the property as it existed at the time of his accident irrespective of its suitability at an earlier time.
 

 Defendants maintain that the statute applies because the property was suitable for motorbiking as measured by its general characteristics, not by the presence of a dangerous condition that made the property unsuitable at some specific time. Alternatively, defendants contend that the suitability rule fashioned by the
 
 Iannotti
 
 plurality has been applied inconsistently by other courts and urge the Court to reconsider it.
 
 [1]
 

 Plaintiff also contends, and defendants deny, that the statu
 
 *548
 
 tory immunity is not available because defendants willfully and maliciously failed to guard against or warn of a dangerous condition.
 

 I
 

 General Obligations Law § 9-103 (1) (a) provides that "an owner, lessee or occupant of premises * * * owes no duty to keep the premises safe for entry or use by others for [specified recreational activities] or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes.” In effect, the statute grants landowners (and lessees and occupants) immunity from liability based on ordinary negligence if a person engaged in a listed recreational activity is injured while using their land. When confronted with categorical questions, we have interpreted the statute liberally to apply it to public and private land
 
 (see, Sega v State of New York,
 
 60 NY2d 183), to rural or urban property whether developed or undeveloped
 
 (Iannotti, supra,
 
 at 42-45), and even to property used for commercial purposes
 
 (id.).
 
 In
 
 Iannotti v Consolidated Rail Corp. (supra),
 
 the Court was asked for the first time to address whether the characteristics of the property are relevant to the owner’s immunity from suits by injured recreationists. We held that they are, that the statute does not apply in all cases. The land must be "suitable” for a permitted activity before immunity under the statute attaches. The test formulated by the
 
 Iannotti
 
 plurality is whether the premises are the "type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation”
 
 (Iannotti,
 
 at 45).
 

 The primary issue submitted on this appeal is whether the inquiry into the suitability of the property should focus exclusively on the condition of the land at the time when plaintiff’s accident occurred. In view of the parties’ submissions, however, we conclude that we should preliminarily reexamine the
 
 Iannotti
 
 holding establishing the suitability standard.
 

 A
 

 The "recreational use” statute has been with us, in one form or another, since 1956. When it was originally enacted as part of the Conservation Law, it applied only to hunting, fishing, trapping and training dogs and immunized landown
 
 *549
 
 ers from liability for negligent acts resulting in injury to persons coming on their lands to engage in those activities. Although the original statute applied broadly to "premises”
 
 (see,
 
 L 1956, ch 842), what little legislative history there is indicates that when the Legislature enacted the statute it intended the immunity to extend only to those lands "suitable” for the four enumerated activities
 
 (see,
 
 Bill Jacket, L 1956, ch 842 [adding Conservation Law § 370], at 18). In the years following 1956 the Legislature amended the statute several times, primarily to transfer the section to the General Obligations Law and to greatly expand the recreational activities to which the statute applies. The description of property subject to the statute remained unchanged, however, and nothing in the amendments, or the history surrounding their adoption, suggests a legislative intention to broaden the statute’s application to premises other than those "suitable” for the enumerated activities.
 

 In
 
 Iannotti,
 
 the plurality opted for a rule (accepted generally by the two dissenters) which applied the exemption for ordinary negligence only to land that was suitable and appropriate for the activity undertaken. Relying on reasoning contained in an earlier unanimous decision, the plurality held that the purpose of the statute was to induce landowners to make their land available for certain types of recreation and that unless it was suitable there was no public purpose in inducing the owners to open their land to recreational activities
 
 (Iannotti,
 
 at 45;
 
 see also, Ferres v City of New Rochelle,
 
 68 NY2d 446, 452). In a concurring opinion two Judges urged that the statutory immunity be applied to all lands, without exception, if the plaintiff was engaged in a listed recreational activity. The Judges’ views differed insofar as the plurality concluded that the proper focus was the appropriateness of the land for recreation and the concurring Judges looked primarily at the activity of the recreater. Nonetheless, an examination of the writings indicates that neither view was quite as narrow as it might appear. The plurality opinion also considered the nature of plaintiff’s activity at the time of the accident and whether it was among those identified as recreational by the statute
 
 (Iannotti,
 
 at 45). Similarly, the concurred acknowledged that the statute could not be read literally to apply to all premises. They recognized, for example, that the Legislature could not have intended the statute to apply to municipal playgrounds because the statute provided no inducement to the municipality to open an existing public
 
 *550
 
 facility: under those circumstances there could be no
 
 quid pro quo
 
 for granting the statutory protection
 
 (see, Iannotti,
 
 at 51, referring to
 
 Ferres, supra).
 
 Moreover, the concurrers acknowledged, hypothetically, that the Legislature probably did not intend to grant immunity to induce the public use of property such as urban backyards
 
 (Iannotti,
 
 at 51-52).
 

 B
 

 Manifestly, the Judges were searching for the intent underlying the statute and attempting to fashion a judicial test which furthered the Legislature’s purpose. The
 
 Iannotti
 
 plurality, relying on the language contained in the Bill Jacket of the original Conservation Law provision attempted to fashion a standard which focused on whether the land, because of its physical characteristics, was "suitable” for recreational activity. The concurrers, relying on the language of the statute, believed that the activity of the recreater was key. They supported this expansive interpretation of the statute as necessary to encourage landowners to make their land available to the public and provide certainty in the application of the statute
 
 (see, Iannotti,
 
 at 52).
 

 C
 

 Against this background, and with the benefit of subsequent experience of the courts in applying the statute, we reconsider
 
 Iannotti
 
 to determine if the construction we have given it comports with the legislative intent. We do so bearing in mind that "we must * * * examine the language of the statute and its underlying purpose to determine its intended effect [b]ut we may also look beyond the words of the statute” to give effect to the legislative intent
 
 (see, Ferres, supra,
 
 at 451;
 
 New York State Bankers Assn. v Albright,
 
 38 NY2d 430, 434-437;
 
 People v Ryan,
 
 274 NY 149, 152).
 

 The premise underlying section 9-103 is simple enough: outdoor recreation is good; New Yorkers need suitable places to engage in outdoor recreation; more places will be made available if property owners do not have to worry about liability when recreationists come onto their land. As the concurring Judges in
 
 Iannotti
 
 recognized, the statute implicitly contemplates a trade off for the public use: recreationists, if permitted to use the lands of others, must assume the risks of doing so
 
 (see, Iannotti,
 
 at 51;
 
 see also, Farnham v Kittinger,
 
 83 NY2d 520, 525). However, immunity is extended only to
 
 *551
 
 owners of property suitable for statutory activities because there is no social value in opening private or public lands generally, and the Legislature did not intend to do so by this statute.
 

 In some cases no public purpose can be served by extending immunity to the owner even though its land is suitable for listed activities
 
 (see, e.g., Ferres, supra).
 
 In such cases, the absence of a
 
 quid pro quo
 
 helps explain the unavailability of the statutory immunity. Nonetheless, the application of section 9-103 does not depend on whether the landowner was induced to open his land or acquiesced in the recreational use. By its terms, the statute applies alike to landowners who open their land to recreationists and also to those who seek to prevent others from using their lands by posting them pursuant to ECL 11-2111.
 
 [2]
 
 Thus, whether the landowner has consented or has been induced to consent to the use of the land by the provisions of the statute is usually irrelevant. In short, if the plaintiff is engaged in a recreational activity enumerated in the statute and the land is conducive and appropriate for the chosen type of recreation, the statutory purpose is fully realized because suitable land is opened up to those who engage in activities deemed worthy of pursuit.
 

 Our reading of the decisions applying the
 
 Iannotti
 
 suitability test leads us to conclude that the courts are having little difficulty with the rule and that it is generally succeeding in furthering the Legislature’s purpose. The suitability test does produce anomalous results in some cases by denying a landowner immunity when a recreationist is injured while on unsuitable property. But the denial of immunity in such cases does not result in the automatic imposition of liability: fault must still be established under common-law principles. The problem seems inherent in the statute and we are satisfied that a different rule would provide immunity to owners of properties which the Legislature could not possibly have intended unless the Court recognized ad hoc exceptions not legally reconcilable with any general rule.
 

 In sum, we conclude the legislative purposes are satisfied and the statute properly applied when (1) the plaintiff is
 
 *552
 
 engaged in one of the activities identified in section 9-103 and (2) the plaintiff is recreating on land suitable for that activity. Whether a parcel of land is suitable and the immunity available is a question of statutory interpretation, and is, therefore, a question of law for the Court
 
 (see, Iannotti, supra,
 
 esp dissent, at 52).
 
 [3]
 

 II
 

 Plaintiff Bragg was engaged in motorbiking, an activity included within section 9-103, and thus defendants have satisfied the first requirement for obtaining immunity under the statute. The remaining issue before us is whether defendants’ land was suitable for that activity. As noted, plaintiff concedes that the land was suitable in April; the question is whether suitability must be determined by looking solely at the characteristics of the land as it existed in September.
 

 The statute removes any obligation on the landowner "to keep the premises safe * * * [and] to give warning of any hazardous condition * * * to persons entering for [recreational] purposes” (General Obligations Law § 9-103 [1] [a]). If this language is to have any force, suitability must be judged by viewing the property as it generally exists, not portions of it at some given time. Any other test, which requires the owner to inspect the land, to correct temporary conditions or locate and warn of isolated hazards as they exist on a specific day, would vitiate the statute by reimposing on the owner the common-law duty of care to inspect and correct hazards on the land.
 

 Ill
 

 Finally, plaintiff contends that defendants’ motion for summary judgment was improperly granted because defendants’ conscious disregard and failure to warn of the obvious hazard is sufficient to invoke the "willful and malicious” exception to landowners’ immunity
 
 (see,
 
 General Obligations Law § 9-103 [2] [a];
 
 see, Farnham, supra,
 
 at 529;
 
 Sega, supra,
 
 at 192). The record fails to present evidence of malice or willful
 
 *553
 
 intent on defendants’ part which would exempt them from the immunity provided by General Obligations Law § 9-103.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . For example, the parties rely on two cases similar to the one before us in which plaintiffs rode vehicles upon the land of companies engaged in the business of digging sand and gravel. In each case, a portion of the defendant’s land was used for excavating, and the remainder of the land was "suitable” for recreational use. In one,
 
 Hoffman v Joseph R. Wunderlich, Inc.
 
 (147 AD2d 807 [3d Dept],
 
 lv denied
 
 74 NY2d 612), plaintiff was injured riding in the larger, "suitable” portion of the property that had been used for recreational riding for over 10 years. His complaint was dismissed, the court holding that defendant was entitled to the immunity provided by General Obligations Law § 9-103. In the other,
 
 Palis v T. H. Kinsella, Inc.
 
 (156 Misc 2d 499,
 
 affd on opn below
 
 204 AD2d 976 [4th Dept]), plaintiff was injured while driving his ATV in the excavation pit, an obviously unsuitable portion of the property. The court held defendant property owner was
 
 not
 
 immune from suit because of the "unsuitable” nature of the land upon which plaintiff was injured took defendant out of the provisions of General Obligations Law § 9-103.
 

 [2]
 

 . By way of contrast, some State statutes deny immunity to landowners who deny access or who do not either explicitly or implicitly invite recreationists on their lands
 
 (see, e.g., Gibson v Keith,
 
 492 A2d 241, 246-248 [Del] [the court catalogued four different types of statutes];
 
 see also, Crawford v Tilley,
 
 780 P2d 1248 [Utah]).
 

 [3]
 

 . With one exception, plaintiffs engaged in any of the enumerated activities are presumed to be doing so for recreational purposes. As to those uses "subjective intent [is] irrelevant”
 
 (see, Farnham v Kittinger, supra,
 
 at 528). However, in the case of "motorized vehicle[s]” which can be used for a number of purposes, a question of fact may be presented as to the plaintiff’s recreational purpose in using the vehicle
 
 (id.,
 
 at 527).