[635 NYS2d 331]

THERESA ALBRIGHT, Individually and as Parent and Guardian of DONALD ALBRIGHT, an Infant, Appellant, v HARLEN W. METZ, JR., et al., Respondents, et al., Defendant.

Third Department, December 14, 1995

APPEARANCES OF COUNSEL

*La Fave & Associates,* Delmar *(Patrick J. Higgins* and *Catherine A. Alderman* of counsel), for appellant.

*Robert A. Murphy, Jr.,* Albany *(James E. Conway* of counsel), for Harlen W. Metz, Jr., respondent.

*Donohue, Sabo, Varley & Armstrong, P. C.,* Albany *(Christine M. D'Addio* of counsel), for H.W. Metz General Contracting, Inc., respondent.

## OPINION OF THE COURT

CASEY, J.

Plaintiff's son, then 13 years old, was injured in April 1991 while riding a motorized dirt bike on property owned by defendant Harlen W. Metz, Jr. From 1976 through 1988, Metz had mined gravel from the property, which resulted in the creation of earthen berms that ran along three sides of the property. Pursuant to a permit issued by the Department of Environmental Conservation in 1988, Metz began to use the property as a construction and demolition debris landfill. Metz contracted with a hauler who ceased hauling debris in late 1990, when most of the mined area had been filled.

On the day of the accident, plaintiff's son accessed the Metz property by crossing adjacent property and riding along a path that went up the earthen berm that ran along the north side of the Metz property. Upon cresting the top of the hill created by the berm, the bike and its rider plunged down a steep slope on the opposite side. According to plaintiff's son, he had ridden the same path the previous day, when there was a substantial flat area at the top of the earthen berm. Plaintiff alleges that the steep slope was created by Metz's excavation work done during the intervening 24-hour period, an allegation that Metz denies.

To recover damages for the injuries sustained by her son when he was thrown from the dirt bike as it plunged down the steep slope, plaintiff commenced this action against Metz, his family-owned business (hereinafter Metz Contracting) and a third party. After issue was joined, Metz and Metz Contracting moved for summary judgment dismissing the complaint. The motion was granted, resulting in this appeal by plaintiff.

■ At issue is whether Metz and Metz Contracting are entitled to the protection of New York's recreational use statute (General Obligations Law § 9-103). It is undisputed that plaintiff's son was engaged in one of the recreational activities listed in the statute when he was injured. The parties' dispute centers on the question of whether the Metz property was suitable for that particular recreational activity, a question of law which is an important factor in determining whether the recreational use statute is applicable (see, *Bragg v Genesee County Agric. Socy.*, 84 NY2d 544). Plaintiff concedes that the Metz property had been used for years by the public to ride motorized dirt bikes and that the property was suitable for that recreational use when it was a gravel pit. Plaintiff claims, however, that when the use of the Metz property changed from a gravel pit to a construction and demolition debris landfill, the property was no longer suitable for riding dirt bikes. Plaintiff's claim is not based upon any evidence of a change in the public's use of the Metz property after the landfill operation began. To the contrary, the testimony of plaintiff and her son reveals no change in their use of the Metz property to ride motorized dirt bikes. Moreover, the affidavit of Paul Coons, submitted by plaintiff on another issue, states that "I have ridden trail bikes and ATV's in the *Metz landfill* hundreds of times and I can verify * * * that *numerous trails covered the landfill* and were used by the local population before April of 1991" (emphasis supplied).

Although a landfill operation obviously involves certain potential hazards which could increase the risk of harm from riding a motorized dirt bike on the property, similar potential hazards present in *Iannotti v Consolidated Rail Corp.* (74 NY2d 39) were insufficient to render the property at issue therein unsuitable for recreational use. When the *Iannotti* case came to this Court (*Iannotti v Consolidated Rail Corp.*, 137 AD2d 62, revd 74 NY2d 39, *supra*), we concluded that the right-of-way where the injury occurred was unsuitable for the recreational use not merely because the property had been developed for a commercial use, but because the particular commercial use as an operating railroad involved inherent potential hazards (*supra*, at 67). Because of the potential hazards inherent in a commercial railroad operation, which could increase the risk of harm from recreational use, we concluded that the right-of-way was not the type of property the Legislature intended to open up for public recreational use by enacting General Obligations Law § 9-103 and its various amendments (*supra*, at 67). The Court of Appeals rejected our analysis, which focused on

the nature of the particular commercial operation (a railroad), and focused instead on evidence of past public use of the right-of-way for riding snowmobiles, motorcycles, three-wheelers and other unregistered motor vehicles to conclude that the property was suitable for such recreational use (*Iannotti v Consolidated Rail Corp.*, 74 NY2d 39, 46-47, *supra*). The Court also noted the absence of any claim that the use of the right-of-way for railroad maintenance purposes actually detracted from its suitability for recreational purposes as established by the past public use of the property (*supra*, at 47). The dissent seeks to revive the analysis that focuses on potential hazards inherent in the landowner's use of the property which might increase the risk of harm to recreational users, an analysis the plurality of the Court of Appeals obviously rejected in *Iannotti* (*see, supra*, at 52-53 [Simons, J., dissenting]).

Here, as in *Iannotti*, there is abundant evidence of prior public recreational use of the Metz landfill to ride dirt bikes and other motorized vehicles. As in *Iannotti*, there are potential hazards inherent in the particular commercial operation on the property (a railroad in *Iannotti*, a landfill here), but there is no evidence that the particular operation actually detracted from the suitability of the property for recreational use demonstrated by the prior public use. There is no evidence that the landfill operation affected either the nature or the frequency of the public's recreational use of the property. Nor is there any evidence that the landfill operation resulted in changes to the property such that it was no longer physically conducive to the recreational activity. Plaintiff contends that a landfill is a "heavily regulated" operation, but a railroad operation is also subject to substantial regulation (*see*, Railroad Law § 50 *et seq.*; 17 NYCRR parts 900-924). In short, there is no evidence that the landfill operation actually rendered the property at issue any less suitable for riding motorized dirt bikes than a right-of-way which is used as an integral part of an operating railroad.

Those who are not dirt bike aficionados might not consider a landfill an appropriate place to recreate, but the undisputed evidence of past public use of the landfill to ride dirt bikes cannot be ignored (*see, Iannotti v Consolidated Rail Corp.*, 74 NY2d 39, 46-47, *supra*; *Wiggs v Panzer*, 187 AD2d 504, 505; *Jacobs v Northeastern Indus. Park*, 181 AD2d 720, 721; *Hoffman v Joseph R. Wunderlich, Inc.*, 147 AD2d 807, 809, *lv denied* 74 NY2d 612; *compare, Ackermann v Town of Fishkill*, 201 AD2d 441, 443). Based upon the undisputed evidence of the past public recreational use of the Metz landfill to ride dirt bikes and

other motorized vehicles to demonstrate the suitability of the property for such use, and in the absence of any evidence to demonstrate that the landfill operation actually detracted from the property's suitability for recreational purposes, we conclude that the property is suitable for the recreational use in which plaintiff's son was engaged when he was injured. The mere fact that Metz's use of the property created potential or actual hazards that increased the risk of harm to those engaged in the recreational pursuit does not necessarily render the property unsuitable for recreational use (see, *Hinchliffe v Orange & Rockland Utils. Co.*, 216 AD2d 528; *McGregor v Middletown School Dist. No. 1*, 190 AD2d 923). The dissent's conclusion that the landfill operation rendered the property too dangerous to be suitable for riding motorized dirt bikes is belied by the absence of any prior accidents despite the substantial public use of trails that, according to evidence submitted by plaintiff, "covered the landfill". The dissent's conclusion that the Department of Environmental Conservation recognizes the unsuitability of landfills for any recreational use whenever it requires an operator to secure a landfill against public entry is unfounded. Considering that the Department's responsibility is to regulate the operation of landfills, not to determine the suitability of land for recreational use, it is apparent that the purpose of the requirement cited by the dissent is to prevent unauthorized and/or unsupervised dumping in landfills.

Plaintiff implicitly concedes that the property was suitable for the particular recreational use when her son safely negotiated the same path the day before the accident, but seeks to impose liability based upon intervening excavation activity which allegedly created a dangerous condition. In *Bragg v Genesee County Agric. Socy.* (84 NY2d 544, *supra*), the Court of Appeals held that a similar claim was subject to the immunity created by the recreational use statute and we see no reason to reach a different conclusion here.

Plaintiff contends that even if her negligence cause of action is subject to the recreational use statute, the statute does not apply to her "statutory" causes of action. The "statutory" causes of action are apparently based upon plaintiff's claims that Metz breached various statutory and/or regulatory obligations imposed upon him as a result of the construction and demolition debris landfill permit issued to him by the Department of Environmental Conservation. It is the general rule that if a statute "does not explicitly provide for a private cause

of action, recovery may be had under the statute only if a legislative intent to create such a right of action is 'fairly implied' in the statutory provisions and their legislative history" (*Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 211, quoting *Sheehy v Big Flats Community Day*, 73 NY2d 629, 633). Plaintiff's allegations concerning the "statutory" causes of action are vague and conclusory, but the claims appear to be based upon the theory that the manner in which the landfill activities should have been conducted was governed by statute and/or regulation. It is familiar law, however, that the violation of such a statute or regulation would merely constitute negligence (*see, Barker v Kallash*, 63 NY2d 19, 24). Plaintiff failed to demonstrate the existence of "statutory" claims separate and distinct from her negligence claims.

■ We also reject plaintiff's argument that Metz Contracting is not entitled to the protection of the recreational use statute. Although Metz Contracting is not an owner of the property, the statute also refers to occupants (General Obligations Law § 9-103 [1] [a]). There is nothing in the record to suggest that the potential liability of Metz Contracting to plaintiff could have arisen out of anything other than its occupancy of the property. To the extent that *Adams v Rochester Gas & Elec. Corp.* (191 AD2d 960), cited by plaintiff, can be read as holding that the recreational use statute does not apply to an occupant who does not have the authority to exclude others from using the property or to permit others to recreate on the property, we disagree. The *Adams* Court concluded that the authority to permit or exclude others from the property is essential because the sole purpose of the recreational use statute is to induce property owners to permit persons to come on their property to pursue specified activities (*supra*). The statutory purpose is fully realized, however, if the injured party is engaged in one of the specified activities and the property is suitable for the activity (*Bragg v Genesee County Agric. Socy., supra*, at 551). Whether the occupant has consented or been induced to consent to the use of the land is irrelevant (*see, supra*) and, therefore, whether the occupant has the authority to do so is also irrelevant.

Metz and Metz Contracting are both entitled to the protection of the recreational use statute and in the absence of any evidence that plaintiff's son was injured as the result of malice or willful intent, Supreme Court correctly dismissed the complaint as to Metz and Metz Contracting.

CARDONA, P. J. (dissenting). We respectfully dissent.

We do not agree with the majority's conclusion that the property at issue is suitable for the public to pursue motorbiking as a form of recreation. Even assuming the existence of evidence of substantial public use* of both the excavated gravel mine and the landfill, such evidence does not automatically establish the property's *legal* suitability for this purpose. If past public use is the key to determining suitability, then statutory immunity should be applied to all lands, without exception, as long as recreators, regardless of the risks involved, can demonstrate that the land is physically conducive to a listed recreational activity. This was not the view adopted by the plurality in *Iannotti v Consolidated Rail Corp.* (74 NY2d 39; *see, Bragg v Genesee County Agric. Socy.*, 84 NY2d 544, 549). In our view, the determination of whether a type of property is suitable for a particular activity involves an examination beyond whether it is physically conducive to that activity. To be suitable, the property must be of a type " 'which would be appropriate for public use in pursuing the activity as recreation' " (*Bragg v Genesee County Agric. Socy.*, *supra*, at 548, quoting *Iannotti v Consolidated Rail Corp.*, *supra*, at 45). The question is not whether people are using the property for a statutory activity, but whether the property, based upon its general characteristics, should be opened to the public to pursue the particular activity. Clearly, there are private lands, like excavation pits, which are obviously unsuitable for motorbiking (*see, Bragg v Genesee County Agric. Socy.*, *supra*, at 547, n 1; *Pulis v T. H. Kinsella, Inc.*, 156 Misc 2d 499, *affd on opn below* 204 AD2d 976).

A construction and demolition debris landfill may contain a broad range of materials such as bricks, concrete, rock, land clearing debris, asphaltic pavement, glass, electrical wiring and pipe (*see*, 6 NYCRR 360-1.2 [b] [38]). Under the terms of the special permit issued to defendant Harlen W. Metz, Jr. to operate the mine and landfill, debris deposited in his landfill was only required to be compacted once a week and a soil cover of six inches applied on a biweekly basis. Recreators would obviously have to ride through areas of the landfill strewn with debris resting at or near the surface. Moreover, construc-

---

* Initially, we cannot subscribe to the majority's finding that dirt bike trails "covered" the four-acre landfill. Although at his examination before trial defendant Harlen W. Metz, Jr. acknowledged that he saw people riding trail bikes on property adjacent to his, he testified that he never saw anyone riding dirt bikes on his property, never saw anything that looked like a path or a dirt bike trail on his property and was never told by anyone that people were riding dirt bikes on his property.

tion and demolition debris landfills pose distinct fire hazards (*see*, 6 NYCRR 360-7.4 [a] [6] [vii], [ix]) as evidenced by the fires that occurred on the property in March 1991. The Department of Environmental Conservation recognized the unsuitability of this land for public use when it required Metz, in his special permit, to secure the land against public entry by erecting earthen berms and installing a front gate across the access road.

In our opinion, the landfill has physical attributes which render it, just like the excavation pit before it, inappropriate for public recreation irrespective of past use. For the above reasons, we find that the instant uncapped landfill is not the type of property which the Legislature envisioned as being inherently suitable for motorized vehicle operation for recreational purposes and, therefore, would hold that General Obligations Law § 9-103 does not bar plaintiff's action against Metz and defendant H.W. Metz General Contracting, Inc. (hereinafter collectively referred to as defendants).

Denial of immunity under General Obligations Law § 9-103 does not result in the automatic imposition of liability on the landowner (*see, Bragg v Genesee County Agric. Socy.*, *supra*, at 551). Therefore, it is necessary to determine defendants' claim that they are entitled to summary judgment under traditional negligence principles (*see, Basso v Miller*, 40 NY2d 233). On a motion for summary judgment "the court is obliged to draw all reasonable inferences in favor of the non-moving party, and may not pass on issues of credibility" (*Rizzo v Lincoln Diner Corp.*, 215 AD2d 546; *see, Negri v Stop & Shop*, 65 NY2d 625, 626). The function of summary judgment remains issue finding, rather than issue determination (*see, Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M.*, 83 NY2d 178, 182; *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395). Here, we cannot say that the examination before trial testimony of plaintiff's son fails to raise a triable question of fact (*see, Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067-1068; *Barber v Daly*, 185 AD2d 567, 569) as to whether defendants excavated a preexisting and frequently used dirt bike path, "suddenly and without warning", prior to the accident. In our view, therefore, Supreme Court incorrectly granted summary judgment in favor of defendants.

Accordingly, we would modify by reversing so much of Supreme Court's order as granted defendants' motions for summary judgment dismissing the amended complaint against them.

MIKOLL and YESAWICH JR., JJ., concur with CASEY, J.; CARDONA, P. J., and PETERS, J., dissent in a separate opinion by CARDONA, P. J.

Ordered that the order is affirmed, with one bill of costs.