OPINION OF THE COURT
 

 Smith, J.
 

 Plaintiff was injured when he fell some 35 feet while riding his motorbike. The central issue in this case is the suitability of the property for motorbiking. If the property was suitable,
 
 *660
 
 defendants would be immune from liability for ordinary negligence as provided by General Obligations Law § 9-103. We conclude that the land was suitable for motorbiking and affirm the order of the Appellate Division.
 

 In 1976, defendant Harlen W. Metz, Jr., purchased over four acres of property adjacent to Spawn Hollow Road in Bethlehem, New York. It is undisputed that Metz utilized the property exclusively as a gravel mine prior to 1988. The mining activity during this period resulted in the creation of earthen slopes above the pit which ran along the perimeter of the property. A similar earthen path, or berm, had previously existed on the northern boundary of the property.
 

 In April of 1988, Metz was issued a permit by the New York State Department of Environmental Conservation (DEC) to use the property as a gravel mine and as a "solid waste management facility,” or landfill, in accordance with 6 NYCRR part 360. Although active mining or excavation of the property was discontinued in approximately 1989 or 1990, gravel from the property was stockpiled and later used to cover the landfill material. .
 

 In April of 1991, the plaintiffs son rode his motorized dirt bike up the road from his home and entered the northwest corner of the Metz landfill as he had done many times before, including the previous day, without incident. As he reached the top of the path that ran up the earthen berm, his bike suddenly plunged into thin air before plummeting almost 35 feet into the bed of the landfill.
 

 Plaintiff filed this personal injury action against defendants Metz and H.W. Metz General Contracting, Inc. Metz and Metz Contracting subsequently moved for summary judgment dismissing plaintiffs complaint based upon General Obligations Law § 9-103.
 
 [1]
 
 By cross motion, plaintiff sought to dismiss defendants’ affirmative defense premised on General Obligations Law § 9-103. In opposition to defendants’ motion, plaintiff
 
 *661
 
 argued that many people in the area had ridden motorbikes in and around the landfill for years and that defendants were grossly negligent for not restricting entry into the area and for failing to warn of the alleged danger. Supreme Court granted defendants’ summary judgment motion, concluding that the property was suitable for motorbiking and that General Obligations Law § 9-103 provided defendants with immunity from liability.
 

 The Appellate Division affirmed. It found "abundant evidence of prior public recreational use of the Metz landfill” (217 AD2d 123, 127) and held:
 

 "Based upon the undisputed evidence of the past public recreational use of the Metz landfill to ride dirt bikes and other motorized vehicles to demonstrate the suitability of the property for such use, and in the absence of any evidence to demonstrate that the landfill operation actually detracted from the property’s suitability for recreational purposes, we conclude that the property is suitable for the recreational use in which plaintiff’s son was engaged when he was injured”
 
 (id.,
 
 at 127-128).
 

 On appeal, plaintiff contends a court must examine the legal suitability of property under General Obligations Law § 9-103 by assessing the land’s general characteristics and physical attributes rather than past public use for recreational purposes. Plaintiff also contends that General Obligations Law § 9-103 should not be extended to protect owners of regulated and restricted lands such as the waste disposal site at issue here. Finally, plaintiff contends that the mere presence of defendant Metz Contracting on the property is insufficient to trigger the statute. Under plaintiff’s theory, only those entities and individuals with the indicia of ownership and control may rely on General Obligations Law § 9-103. Defendants oppose each of plaintiff’s contentions which were all rejected by the Appellate Division.
 

 Our previous rulings in
 
 Bragg v Genesee County Agric. Socy.
 
 (84 NY2d 544) and
 
 Iannotti v Consolidated Rail Corp.
 
 (74 NY2d 39) are dispositive of the primary issue on the instant appeal.
 

 General Obligations Law § 9-103 "grants immunity for ordinary negligence to landowners who permit members of the
 
 *662
 
 public to come on their property to engage in several enumerated recreational activities, including motorbiking”
 
 (Bragg, supra,
 
 84 NY2d, at 546-547). In
 
 Bragg,
 
 this Court stated that "the statute properly applied when (1) the plaintiff is engaged in one of the activities identified in section 9-103 and (2) the plaintiff is recreating on land suitable for that activity”
 
 (Bragg, supra,
 
 84 NY2d, at 551-552).
 

 Here, it is undisputed that plaintiff was engaged in an activity included within section 9-103 when he was injured — motorbiking
 
 (Iannotti, supra,
 
 74 NY2d, at 42, n 1). Thus, the first prong of the test is satisfied.
 

 The statute protects landowners against claims of ordinary negligence and, as the lower courts determined, there is no evidence of willful or malicious failure on the part of Metz or Metz Contracting (General Obligations Law § 9-103 [2] [a]). Thus, in this case, our inquiry must focus on whether the property might be deemed suitable for the recreational use in which plaintiff’s son was participating when his accident occurred.
 

 In
 
 Iannotti
 
 (74 NY2d 39,
 
 supra),
 
 this Court articulated the elements a court must consider to determine the suitability of property for application of General Obligations Law § 9-103: whether the premises are the "type of property which is not only physically conducive to the particular activity or sport but is also a type which would be appropriate for public use in pursuing the activity as recreation”
 
 (id.,
 
 at 45).
 

 A substantial indicator that property is "physically conducive to the particular activity” is whether recreationists have used the property for that activity in the past; such past use by participants in the sport manifests the fact that the property is physically conducive to it
 
 (see, Iannotti, supra,
 
 74 NY2d, at 46-47;
 
 see also, Bragg, supra,
 
 84 NY2d, at 547). It is clear that motorbikers used this property for a long period of time before the accident here. Thus, as to the first element of the
 
 Iannotti
 
 test, plaintiff’s "abundant evidence” of past recreational use of the Metz landfill for motorbiking clearly evinces that the property is physically conducive to that activity.
 

 Despite such evidence here, however, plaintiff contends that the Metz landfill was never suitable for motorbiking because the regulation of the landfill by the DEC precludes a finding that the property was appropriate for such recreational use. Thus, plaintiff argues that the second prong of the test for suitability set forth in
 
 Iannotti
 
 (74 NY2d 39,
 
 supra)
 
 is not satisfied. We do not agree.
 

 
 *663
 
 As stated in the permit issued to Metz by the DEC, the "[s]ite shall be secured against entry when owner or operator are not present.” Fencing of the site was not required however. Although a "site” is defined under the regulations as "the geographically contiguous property of a solid waste management facility and includes the land area of that facility and its access roads, appurtenances and land buffer areas” (6 NYCRR 360-1.2 [b] [154]), the DEC regulations regarding public access to areas around landfills have little to do with restricting recreational use.
 
 [2]
 

 The purpose of 6 NYCRR part 360 "is to regulate solid waste management facilities” (see, 6 NYCRR 360-1.1 [a]). The "Operational requirements for all solid waste management facilities,” as set forth at 6 NYCRR 360-1.14, provide that "[p]ublic access to facilities and receipt, of solid waste may occur only when an attendant is on duty” (6 NYCRR 360-1.14 [c]). Access to and use of the facilities may be controlled by "natural barriers or other suitable means” (6 NYCRR 360-1.14 [d]). The regulations further require a facility owner or operator to establish a "control program” to "assure that only solid waste authorized by the department to be treated, disposed of or transferred at the facility is being treated, disposed of or transferred at that facility” (6 NYCRR 360-1.14 [e] [1]).
 

 These access regulations are clearly targeted at unauthorized dumping in the facility rather than banning potential public recreational use of natural barriers, access roads or land buffer areas which are distinct and apart from the landfill itself. We further note that even the guidelines governing the regulation of hazardous waste management facilities refer to the prevention of unknowing and/or unauthorized entry into "the active portion” of the facility (6 NYCRR 373-2.2 [f] [1]) defined as "that portion of a facility where treatment, storage or disposal operations are being or have been conducted” (6 NYCRR 370.2 [b] [5]). Of course, the Metz landfill does not fall into the latter "hazardous” category since it was only authorized to accept bricks, concrete, soil, rocks, lumber, trees, brush and stumps.
 

 To the extent plaintiff argues that the land’s suitability must be judged by its "general characteristics” and that the general characteristic of the property at issue is landfill,
 
 *664
 
 plaintiff ignores the fact that portions of Metz’s land were not used as landfill and it was in these other areas that plaintiff’s son injured himself while motorbiking.
 
 [3]
 
 Moreover, while the parties dispute whether the property had been altered during a 24-hour period to create a cliff where none had existed, such a change would not vary the result here. It is the general suitability of the property that governs. In
 
 Bragg
 
 we stated:
 

 "The statute removes any obligation on the landowner 'to keep the premises safe * * * [and] to give warning of any hazardous condition * * * to persons entering for [recreational] purposes’ (General Obligations Law § 9-103 [1] [a]). If this language is to have any force, suitability must be judged by viewing the property as it generally exists, not portions of it at some given time. Any other test, which requires the owner to inspect the land, to correct temporary conditions or locate and warn of isolated hazards as they exist on a specific day, would vitiate the statute by reimposing on the owner the common-law duty of care to inspect and correct hazards on the land”
 
 (Bragg, supra,
 
 84 NY2d, at 552).
 

 When interpreting statutory language, " 'the spirit and purpose of the act and the objects to be accomplished must be considered.
 
 The legislative intent is the great and controlling
 
 principle’ ”
 
 (Ferres v City of New Rochelle,
 
 68 NY2d 446, 451 [emphasis in original, quoting
 
 People v Ryan, 274
 
 NY 149, 152]). As this Court explained:
 

 ''The premise underlying section 9-103 is simple enough: outdoor recreation is good; New Yorkers need suitable places to engage in outdoor recreation; more places will be made available if property owners do not have to worry about liability when recreationists come onto their land”
 
 (Bragg, supra,
 
 84 NY2d, at 550;
 
 see also, Ferres v City of New Rochelle,
 
 68 NY2d 446, 451,
 
 supra).
 

 Here, plaintiff’s son was injured while motorbiking on an
 
 *665
 
 earthen berm above the Metz landfill pit. Applying General Obligations Law § 9-103 to the facts of this case is consistent with the legislative purposes underlying that statute and the regulations of the DEC.
 
 [4]
 

 Plaintiffs remaining contention is that the statute does not protect Metz Contracting from negligence claims arising from its maintenance of the property. The statute reaches "owner[s], lessor[s] or occupant[s]” (General Obligations Law § 9-103 [1]). Thus, three different levels of property interests may be protected against common-law negligence claims arising from injuries to recreationists on real property when the statute applies. Nevertheless, the statute does not protect those who may not be classified as owners, lessors or occupants.
 

 Metz Contracting submitted uncontested proof that it did not own the property and neither party has argued that the company was a lessor. Thus, General Obligations Law § 9-103 is only properly applied to Metz Contracting if it can be deemed an "occupant” under the statute. Plaintiff contends that Metz Contracting is not an occupant since it did not control access to the land or hold the right to exclude people from the property.
 

 Metz’s DEC permit required him to establish procedures to control dumping, disposal and mining in the facility. There is no argument that Metz Contracting, owned and controlled by Metz, functioned as his work crew and agent in managing the property in accordance with the DEC regulations. Thus, Metz Contracting’s authorized presence on the premises was sufficient to bring it within the meaning of occupant in the statute. The record here fully supports the Appellate Division’s determination that General Obligations Law § 9-103 encompasses Metz Contracting.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Section 9-103 of the General Obligations Law provides in pertinent part:
 

 "1. Except as provided in subdivision two,
 

 "a. an owner lessee or occupant of premises, whether or not posted as provided in section 11-2111 of the environmental conservation law, owes no duty to keep the premises safe for entry or use by others for * * * motorized vehicle operation for recreational purposes * * * or to give warning of any hazardous condition or use of or structure or activity on such premises to persons entering for such purposes * * *
 

 "2. This section does not limit the liability which would otherwise exist
 

 
 *661
 
 "a. for willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity.”
 

 [2]
 

 . We note that General Obligations Law § 9-103 applies even "to those who seek to prevent others from using their lands by posting them pursuant to ECL 11-2111”
 
 (Bragg, supra,
 
 at 551).
 

 [3]
 

 .
 
 Compare, Hoffman v Joseph R. Wunderlich, Inc.,
 
 147 AD2d 807,
 
 lv denied
 
 74 NY2d 612 (no liability when plaintiff was injured riding in the suitable portion of the property that had been used for recreational riding for over 10 years),
 
 with Pulis v T. H. Kinsella, Inc.,
 
 156 Misc 2d 499,
 
 affd on opn below
 
 204 AD2d 976 (liability when plaintiff was injured while driving ATV in an unsuitable portion of the property, the excavation pit).
 

 [4]
 

 . We further note that plaintiff’s son and the rest of her family have received the benefits of the statute through years of recreational use over Metz’s property. Nevertheless, "the statute implicitly contemplates a trade off for the public use: recreationists, if permitted to use the lands of others, must assume the risks of doing so” (Bragg,
 
 supra,
 
 84 NY2d, at 550).