OPINION OF THE COURT
Joseph D. Mintz, J.
Defendant moves for summary judgment and to amend its answer based upon a defense predicated upon General Obligations Law § 9-103 in this action for wrongful death and personal injuries sustained by three snowmobile drivers on January 10, 1997 on a bicycle path owned by the Village of Akron, upon which Niagara Mohawk Power Corporation has an easement. Both the Village and the easement holder previously moved for summary judgment upon the same grounds. The action was dismissed against the Village by the Appellate Division in Blair v Newstead Snowseekers, Inc. (2 AD3d 1286 [4th Dept 2003]), and the action was dismissed against the easement holder by this court in a motion to reargue following the Appellate Division decision. Defendant is the sole remaining defendant.
While all of the parties concede that the activity of the plaintiffs falls within the scope of General Obligations Law § 9-103 (1) (a), the parties disagree as to whether the defendant is a protected party under section 9-103. Defendant is neither an “owner” nor a “lessee” under section 9-103; however, defendant claims to be an “occupant of [the] premises” by arrangement with the Village of Akron.
The facts for purposes of this motion are as follows: Defendant is a snowmobile club, operating as a corporation, whose purpose is to officially designate, mark, maintain and groom certain snowmobile trails in western New York. Defendant would routinely receive informal permission to mark and maintain snowmobile trails in use on public and private land. In accordance with its purposes, defendant designated the trail at issue for snowmobiling, and posted signs designating it as such during the fall of 1996. Defendant claims that permission to do so was sought from each of the private and public landowners along the trail[1] and that all of the public entities, including the Village of Akron, granted permission without formal action by their municipal boards; in exchange, each of the municipalities is listed as an insured on the defendant’s liability insurance policy. The Village admitted that it was aware that the trail was *845 used by snowmobile riders and made no formal effort to prevent access to them prior to the accident, despite a provision in the easement with Niagara Mohawk Power Authority that prohibited use of the easement by snowmobile riders. After the accident, the Village enacted a formal prohibition on snowmobiling upon the trail, and maintained that no permission had ever been given to defendant to designate the subject trail for snowmobile traffic.
Part of the marked trail, designating it for snowmobile traffic, was a bridge over Murder Creek. Plaintiffs’ case against defendant is based upon the inappropriateness of the bridge as part of a snowmobile trail, and that, by marking the bridge as part of the snowmobile trail, the riders had an expectation of its appropriateness for snowmobile traffic. Thus, the claims against this defendant are not based in normal theories of premises liability, but are based in claims of active negligence by the defendant in designating an inappropriate bridge for snowmobile use.
L
While defendant moves to amend its answer to add the applicability of General Obligations Law § 9-103, defendant argues that the applicability of the section need not be pleaded as an affirmative defense under Ferres v City of New Rochelle (68 NY2d 446 [1986]). In fact, the plaintiffs pleaded the inapplicability of section 9-103 in their complaints, which the defendant denied. The Court of Appeals decision in Ferres is based upon rationale that section 9-103 defines the scope of a landowner’s duty rather than a defense to that duty. The Court also noted that the facts necessary to determine whether section 9-103 applies, namely, whether the plaintiff engaged in a particular activity, are within the knowledge of the plaintiff, rather than the defendant, so that a plaintiff could not assert that the applicability of section 9-103 “would be likely to take the [plaintiff] by surprise,” so as to invoke the requirement of pleading the affirmative defense under CPLR 3018 (b). Here, the critical facts, whether the defendant is an “occupant of [the] premises” within the meaning of section 9-103, are within the defendant’s control, and may be such as to take plaintiff by surprise when the applicability of section 9-103 is claimed by this defendant. Also, the defendant has failed to raise the applicability of section 9-103 in any manner for the six years this action was pending, despite motions by codefendants asserting the protection of section 9-103. Nevertheless, the court is constrained to follow Ferres *846 and allow defendant to claim the applicability of section 9-103 without pleading it. Given the determination under Ferres, the amendment of the answer is superfluous, and that motion is denied.
IL
There is a serious question as to whether the defendant is an “occupant” under General Obligations Law § 9-103. Defendant claims that, under the Court of Appeals decision in Albright v Metz (88 NY2d 656, 665 [1996]), an occupant is anyone with “authorized presence on the premises.” In Albright, the Court of Appeals determined that a contractor, a corporation wholly owned by the landowner’s family, was an occupant of the property within the meaning of section 9-103. In that case, the plaintiff had argued that in order to be an “occupant” the party had to “control access to the land or hold the right to exclude people from the property,” and the contractor did not have such a right. (Albright at 665.) While the Third Department, in the underlying decision, expressly rejected the test urged by the plaintiff (Albright v Metz, 217 AD2d 123 [3d Dept 1995], affd 88 NY2d 656 [1996]), the Court of Appeals never addressed whether to adopt such a test. The Court based its decision on a finding that the contractor was an alter ego of the owner, and was specifically charged with the management of the property for Department of Environmental Conservation purposes, and then concluded that the contractor’s authorized presence on the premises was sufficient. In cases subsequent to Albright, courts have stated the Court’s test as “authorized presence on the premises [is] sufficient to bring it within the meaning of occupant in the statute”;[2] however, the decision in Albright actually is “Metz Contracting’s authorized presence on the premises was sufficient to bring it within the meaning of occupant in the statute.” (Albright, 88 NY2d at 665.) Furthermore, it is clear that the facts of Albright, and especially the relationship between the owner and the contractor, greatly influenced the decision. The Court neither rejected the test urged therein by the plaintiff, nor adopted a bright-line test requiring only some type of authorized presence.
Prior to the Court of Appeals determination in Albright, the Fourth Department determined in Adams v Rochester Gas & Elec. Corp. (191 AD2d 960, 960 [4th Dept 1993]) that a licensee *847 with the right to “ ‘construct, maintain and use’ a high-voltage transmission line along the right-of-way” was not an occupant of that right-of-way for purposes of section 9-103. The Court noted that the licensing agreement “conferred no authority upon defendant to exclude others from using the property or to open the right-of-way for recreational use.” (Id.) While Albright did not specifically overrule Adams,[3] the Fourth Department has not employed this standard in any case subsequent to the Court of Appeals decision in Albright and appears to reject the test in its earlier decision in this case, Blair v Newstead Snow-seekers, Inc. (2 AD3d 1286, 1289 [4th Dept 2003]).
In its most recent examination of the definition of “occupancy” under section 9-103, the Fourth Department found a corporation under contract to maintain all of the buildings and grounds on the landowner’s property to have an “ ‘authorized presence’ . . . sufficient to bring it within the meaning of occupant in the recreational use statute,” quoting Albright. Weller v Marriott Mgt. Servs. Corp., 238 AD2d 888, 888 [4th Dept 1997]; see also, Weller v Colleges of the Senecas, 261 AD2d 852 [4th Dept 1999], lv denied 93 NY2d 817 [1999].) While the Weller decisions may be read to have adopted an “authorized presence” test, the Fourth Department has never specifically overruled Adams. Thus, it is reasonable to conclude that the agreement establishing the authorized presence in Weller compels a finding of “occupancy,” while the agreement in Adams does not. With that understanding, it is unreasonable to conclude that Al-bright stands for the proposition that any authorized presence on recreational property entitles such a party to the benefit of section 9-103.
The presence on the subject property which defendant claims is authorized is nonspecific, but appears in this case to have been limited to the designation of portions of the trail as a snowmobile trail and the posting of signs informing snowmobilers of that designation. Defendant’s presentation before the village planning board proposed that the defendant erect (and remove) signs, repair any damage caused by snowmobiles and use defendant’s equipment to groom the trails. While the village planning board recommended to the village board of trustees the approval of the defendant’s proposal, subject to the provision of insurance coverage and documentation, the scope of the actual approval by the village board of trustees, if any, is not *848 clear. The only evidence of any presence by the defendant upon the property is the placement of the signs. This presence, even if authorized, is significantly limited in comparison to the responsibility of the contractor in Albright to manage the environmental requirements upon the property, or the contractor in Weller, who was charged with all of the maintenance of the property and buildings of a college campus. It is even more limited than the agreement in Adams, wherein the licensee had an express right-of-way for the purpose of erecting and maintaining a transmission cable.
Furthermore, there is no evidence that the village board of trustees ever formally granted defendant’s request. The only evidence of any informal agreement is the acceptance by the Village of the certificate of insurance naming the Village as an insured, the recollection of some of the members of the defendant, and the fact that the Village never prohibited the defendant from erecting signs, never removed the signs and did not seek to prevent snowmobile traffic prior to the accident. While there is clear evidence of the recommendation of the planning board[4] and the provision and acceptance of documents by the planning board, it is likely that the village board of trustees never actually approved defendant’s proposal. At best, it appears that the Village did nothing to dissuade defendant from believing that it had adopted the recommendation of the planning board.
It is not clear that the Village could have granted the defendant’s proposal in any event. The agreement between the Village and Niagara Mohawk provided that snowmobile traffic would not be permitted on the easement. Any agreement by the Village would have been in derogation of its agreement with the easement holder; this, too, demonstrates the absence of any agreement between the Village and the defendant, despite the recommendation of the planning board and the seeming acquiescence of the Village in the activity of the defendant during the fall of 1996.
Defendant urges that this court follow the decision in Blount v Town of W Turin (195 Misc 2d 892 [Sup Ct, Lewis County 2003]), wherein a private not-for-profit group who seasonally maintained the town’s snowmobile trail was found to be entitled to the protection of section 9-103. While the facts of that case *849 are remarkably similar, there are two important distinctions. First, in that case, there was undisputed evidence that there was an agreement (albeit an informal one) between the Town and the private group to maintain the trail. Here, there is evidence of a lack of an agreement based upon the absence of any action by the Village on the planning board recommendation, the prohibition upon snowmobile traffic in the agreement between the Village and Niagara Mohawk, the position of the village board of trustees as demonstrated in the minutes of a meeting held on February 3, 1997,[5] and deposition testimony of the village officials denying any agreement.[6] Second, the agreement and the action of the private group under it in Blount entailed the maintenance and grooming during the winter months of an otherwise unused road. That is, the Town in Blount had delegated to the private group all responsibility for maintenance of the trail during the winter months, similar to the relationship between the contractor and owner in Albright, and the contractor and the college in Weller. In this case, even assuming there was any agreement between the Village and defendant, there was no such delegation of maintenance, and the presence of the defendant on the subject trail during the winter of 1996-1997 appears to be limited to the placement of signs.
In conclusion, the defendant has failed to establish that it had any authorized presence on the subject property; in fact, the defendant has failed to adequately rebut the evidence offered by plaintiffs that it did not have any authorized presence on the subject property, so as to even create a genuine issue of fact that such an agreement between the defendant and the Village existed. This reason alone would be sufficient to deny to defendant the protection of General Obligations Law § 9-103. In addition, however, even if the defendant had some authorized presence on the subject property, it does not arise to the level that would constitute “occupancy” within the meaning of section 9-103 under the decision of the Court of Appeals in Albright and the decisions of the Fourth Department in Adams and Weller. For these reasons, the defendant’s motion is denied and General Obligations Law § 9-103 is found to be inapplicable as a matter of law.
*850 III
Even if section 9-103 were found to be available to this defendant regarding the subject property, the claims maintained by plaintiffs against this defendant are not protected by section 9-103. Section 9-103 provides that a protected party “owes no duty to keep the premises safe for entry or use by others” for certain enumerated activities. The claims against this defendant do not arise out of any duty to keep the premises safe for use. Instead, the claims against defendant concern the direction by defendant of snowmobile traffic over a bridge which is inappropriate for snowmobile use. In that respect, the Fourth Department’s decision in Sauberan v Ohl (239 AD2d 891 [4th Dept 1997]) applies. In that case, a landowner was denied the protection of section 9-103 concerning claims made against him for directing a hunter where to shoot. As in Sauberan, the claims against this defendant are not grounded in premises liability, but in the negligent act of directing plaintiffs and other snowmobilers to include the bridge over Murder Creek in their snowmobile activity. This constitutes an additional reason to preclude the protection of General Obligations Law § 9-103 to this defendant in this action. Under all of the circumstances, it would be an unjust extension of section 9-103 to such a defendant.
For all of the reasons above, the motions of defendant are denied, and, pursuant to CPLR 3212 (g), General Obligations Law § 9-103 is inapplicable to this action.

. In addition to the Village of Akron, portions of the trail were located in the Town of Clarence and the Town of Newstead.

. See, e.g., Blount u Town of W. Turin, 195 Misc 2d 892, 895 (Sup Ct, Lewis County 2003).

. The Third Department’s decision did specifically reject the holding in Adams. (See Albright, 217 AD2d at 129.)

. See planning board minutes of Sept. 5, 1996, exhibit K to defendant’s moving papers.

. See exhibit O to Kirby affidavit on behalf of plaintiff Blair in opposition to motion.

. See EBT of Mayor Michael Charles, Jan. 3, 2002, exhibits R-Y to Kirby affidavit.